IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT
**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, MCCAFFERY, STEVENS, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 18 EAP 2013 |
| | : | |
| Appellant | : | Appeal from the Judgment of Superior |
| | : | Court entered 4/28/2011 (reargument |
| | : | denied on 7/6/2011) at No. 3075 EDA |
| v. | : | 2009 vacating/remanding the Judgment |
| | : | of Sentence entered on 8/5/2005 in the |
| | : | Court of Common Pleas, Criminal |
| RUDOLPH FIELDS, | : | Division of Philadelphia County at Nos. |
| | : | CP-51-CR-1102011-2003 and CP-51- |
| Appellee | : | CR-1102031-2003 |
| | : | |
| | : | |
| | : | |
| | : | ARGUED: March 11, 2014 |

## OPINION

**MR. JUSTICE SAYLOR**                    **DECIDED: December 31, 2014**

In this appeal by allowance, we consider whether sentences for multiple crimes of violence committed in the same criminal episode are each subject to statutory enhancement, where the sentences are governed by the second-strike provision of Pennsylvania's recidivist sentencing statute.

In 1992, Appellee forced his way into a woman's home and sexually assaulted her. He pled guilty to rape and burglary and was sentenced to four to ten years' imprisonment. Within a month after his release from confinement in 2002, Appellee forced his way into another victim's residence, brutally attacked and raped her, and robbed her of her money and car. The Commonwealth arrested Appellee and charged

him with rape, involuntary deviate sexual intercourse ("IDSI"), robbery, burglary, and related offenses.

Appellee entered an open plea of guilty to all charges. A sentencing hearing was conducted on August 5, 2005. At the conclusion of the hearing, the court applied the second-strike offender portion of Pennsylvania's recidivism statute, see 42 Pa.C.S. §9714 (relating to sentences for second and subsequent offenses), in view of Appellee's prior convictions for the 1992 offenses.[1] That provision states:

> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

42 Pa.C.S. §9714(a)(1). Because Section 9714(g) defines "crime of violence" to include rape, IDSI, robbery, and burglary, see 42 Pa.C.S. §9714(g), the common pleas court sentenced Appellee to mandatory minimum sentences of 10 to 20 years for each of these four charges.[2]

In an unpublished decision, the Superior court vacated Appellee's judgment of sentence and remanded for resentencing using a single, second-strike ten-year

---

[1] Although Appellee had committed two crimes of violence in 1992, he was sentenced at the 2005 proceeding as a second-strike offender, and not a third-strike offender, because he had been sentenced and incarcerated for the earlier offenses on a single occasion. See Commonwealth v. Shiffler, 583 Pa. 478, 495, 879 A.2d 185, 195 (2005).

[2] The court ruled that the sentences were to run consecutively. Additionally, the court imposed consecutive terms of incarceration for the other offenses, for an aggregate prison term of 45½ to 91 years.

minimum. The court based its decision on this Court's holding in Commonwealth v. McClintic, 589 Pa. 465, 909 A.2d 1241 (2006). In McClintic, a majority of this Court determined that only one of multiple crimes committed by a third-strike offender during a single criminal episode is eligible for the 25-year minimum sentence required by subsection (a)(2).[3] While recognizing that the present case involves a second-strike offender, the intermediate court nonetheless found McClintic controlling, expressing that McClintic's central tenet was that any repeat offender is subject to only a single sentence enhancement for each strike – where multiple strikes are, by judicial interpretation, sequential and separated by an intervening opportunity for reform. See Commonwealth v. Fields, No. 3075 EDA 2009, slip op. at 11. See generally Commonwealth v. Dickerson, 533 Pa. 294, 299, 621 A.2d 990, 992 (1993) ("In cases of recidivism, we expect the following sequence of events: first offense, first conviction, first sentencing, second offense, second conviction, second sentencing."); Shiffler, 583 Pa. at 494-95, 879 A.2d at 195.

We granted review to assess whether the mandatory minimum sentence set forth in Section 9714(a)(1) of the Sentencing Code, 42 Pa.C.S. §9714(a)(1), only applies to one of multiple crimes of violence committed in a single criminal episode by a second-strike offender. See Commonwealth v. Fields, 619 Pa. 398, 64 A.3d 628 (2013) (per curiam). The parties agree that the charges of rape, IDSI, robbery, and burglary arose from a single criminal episode and that these offenses constitute crimes of violence for

---

[3] That provision states, in relevant part:

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement . . ..

42 Pa.C.S. §9714(a)(2).

sentencing purposes. They disagree over whether Section 9714(a)(1) permits multiple 10-to-20 year sentences in such circumstances.

The Commonwealth argues that the plain language of Section 9714(a)(1) supports the common pleas court's decision to apply the ten-year mandatory minimum term for each crime of violence, as that provision lacks any limiting language which would require a court to impose only one such term per criminal episode. Additionally, according to the Commonwealth, the intermediate court erroneously extrapolated from McClintic, which construed a materially different provision. The Commonwealth thus requests that this Court clarify that McClintic's holding only applies to subsection (a)(2). Alternatively, the Commonwealth suggests that McClintic was wrongly decided and asks this Court to disapprove McClintic outright based on the reasoning of the dissenting opinion in that case, which opined that the phrase, "separate criminal transactions" as used in subsection (a)(2) refers to "the enhancing prior offenses" rather than the current offense. Brief for Commonwealth at 16 (emphasis omitted in part); see McClintic, 589 Pa. at 484-85, 909 A.2d at 1253 (Eakin, J., dissenting).

Appellee states that the Superior Court correctly applied McClintic and that he "expressly adopts" that court's rationale. Brief for Appellee at 13.

The Defender Association of Philadelphia, as amicus curiae, advances several arguments in favor of affirmance. First, it claims that the plain text of the statute supports the Superior Court's holding because the mandatory sentence reflected in subsection (a)(1) is phrased in the singular ("a minimum sentence of at least ten years"). The Defender Association contends that, even if the statute is ambiguous in this respect, it should be construed in favor of the accused under the rule of lenity. See 1 Pa.C.S. §1928(b)(1); Commonwealth v. Booth, 564 Pa. 228, 234, 766 A.2d 843, 846 (2001) (noting that, under the rule of lenity, any doubt about a penal statute's meaning

is resolved in favor of the accused). Next, it argues that subsections (a)(1) and (a)(2) should be construed similarly given that they share crucial statutory language, as they both set forth the penalty for a person convicted of a crime of violence. Further, the Defender Association maintains that an offender establishes his status as a recidivist only one time per criminal episode, and hence, only allowing one mandatory minimum sentence per criminal episode is consistent with the recidivist philosophy adopted by the courts in construing Section 9714. Finally, the Defender Association suggests that the interests of justice are better served by a single enhancement for each criminal episode as this would allow more flexibility at sentencing – e.g., a court could sentence a second-strike offender convicted of two crimes of violence to an aggregate of 15-to-30 years, rather than having to choose between 10-to-20 years or 20-to-40-years.

As explained, the Superior Court relied heavily on McClintic, which addresses the third-strike counterpart to the second-strike provision at issue in this case, and the Commonwealth presently asks us to overrule, or at least limit, that decision to the third-strike context. Thus, we will address the continuing vitality and reach of McClintic before proceeding to further statutory analysis.

As for whether McClintic should be disapproved, we note initially that the question of whether a prior exercise in statutory construction should be overruled is a sensitive one that should only be undertaken when reasonably necessary. Circumspection is particularly warranted in cases involving statutory (as opposed to constitutional) interpretation, "because in the statutory arena the legislative body is free to correct any errant interpretation of its intentions[.]" Hunt v. Pa. State Police, 603 Pa. 156, 174, 983 A.2d 627, 637 (2009) (quoting Shambach v. Bickhart, 577 Pa. 384, 406, 845 A.2d 793, 807 (2004) (Saylor, J. concurring)). Here, it is not necessary to revisit McClintic since, as noted, we are construing a materially different statutory provision. In

particular, subsection (a)(2) contains the phrase, "such crimes of violence arising from separate criminal transactions," which does not appear in subsection (a)(1). This is important because the phrase was critical to the McClintic majority's understanding that (a)(2)'s sentence enhancement applies to only one of the crimes of violence committed by a third-strike offender during a criminal transaction. In this regard, McClintic reasoned as follows:

> The question we must now address is whether each crime of violence requires its own sentence enhancement. . . . To answer this question, we look to the language of Section 9714(a)(2), which provides that where the person had, at the time of the current offense, i.e., crime of violence, "previously been convicted of two or more <u>such crimes of violence arising from separate criminal transactions</u>," the sentence enhancement applies. 42 Pa.C.S. § 9714(a)(2) (emphasis added). Use of the word "such," a demonstrative adjective, refers to an antecedent, or a category of things previously mentioned. The category of things previously mentioned is "current offense," which we have defined as "crime of violence." <u>Use of the word "such" before the clause "crimes of violence arising from separate criminal transactions" serves to limit the current offense or crimes of violence to which the sentence enhancement applies to those "crimes of violence arising from separate criminal transactions."</u> Thus, close examination of the specific statutory language, the polestar of all statutory construction, reveals that the legislature intended to apply sentencing enhancements for all crimes arising from a criminal transaction, rather than for each individual crime within such transaction

McClintic, 589 Pa. at 480-81, 909 A.2d at 1250-51 (second emphasis added).

The McClintic Court was sharply divided over the above analysis. This author dissented, as did Mr. Justice Eakin, whose dissenting opinion was joined by former Justice Newman. Nevertheless, the interpretation was endorsed by a majority of the Court. As such, it enjoys precedential status, and we deny the Commonwealth's request that it be overruled. Whether McClintic's reasoning should be seen as extending to subsection (a)(1), however, is a separate question.

As noted, the Superior Court applied <u>McClintic</u> to the present case under a very broad view of <u>McClintic</u>'s holding which would pertain to all repeat offenders. Such application of the holding, however, is not required by its underlying reasoning. The reasoning, as can be seen above, centered on the "such crimes of violence arising from separate criminal transactions" phraseology, which is absent from subsection (a)(1). Thus, we find it most appropriate to resolve this appeal based on the language of subsection (a)(1) instead of simply importing <u>McClintic</u>'s single-enhancement rule into the present context. <u>See</u> <u>Pryor v. United States</u>, 278 F.3d 612, 613 n.1 (6th Cir. 2002) (noting that where two different subsections of a statutory provision are involved, the interpretation of one does not control relative to the other), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Dodd v. United States</u>, 545 U.S. 353, 125 S. Ct. 2478 (2005); <u>Commonwealth v. Omar</u>, 602 Pa. 595, 611 n.14, 981 A.2d 179, 189 n.14 (2009) (same as to different statutes); <u>cf.</u> <u>Lance v. Wyeth</u>, ___ Pa. ___, ___, 85 A.3d 434, 453 (2014) (explaining that the holding of a judicial decision is to be read against its facts, a precept that protects against the "unintentional extension of governing principles beyond scenarios to which they rationally relate" (citing, <u>inter</u> <u>alia</u>, <u>Oliver v. City of Pittsburgh</u>, 608 Pa. 386, 395, 11 A.3d 960, 966 (2011))).[4] Accordingly, we now turn to a consideration of subsection (a)(1)'s text.

---

[4] The Superior Court acknowledged the Commonwealth's argument that this case is distinguishable from <u>McClintic</u> because it involves a subsection that lacks the phrase, "such crimes of violence arising from separate criminal transactions." However, the intermediate court rejected the argument on the basis that the second-strike provision addresses a situation in which there has been only a single prior strike, and hence, there would be no need for the Legislature to clarify that multiple prior crimes of violence only constitute separate strikes if they arise from different criminal transactions. <u>See</u> <u>Fields</u>, No. 3075 EDA 2009, <u>slip</u> <u>op.</u> at 10-11. This explanation treats the "separate criminal transactions" limitation in the manner favored by the <u>McClintic</u> dissent, as addressing <u>prior</u> criminal transactions. Regardless, the Superior Court only purported to explain why the subsection (a)(2) language <u>McClintic</u> found determinative was absent (…continued)

Initially, certain longstanding principles apply to any inquiry into a statute's meaning. The overall objective of the inquiry, of course, is to ascertain and effectuate legislative intent. See 1 Pa.C.S. §1921(a). In ascertaining such intent, words that are clear and free of ambiguity may not be disregarded under the pretext of pursuing the law's "spirit." Id. §1921(b). In this regard, although penal provisions are strictly construed, see id. §1928(b)(1), the straightforward meaning of such provisions should be adhered to absent an ambiguity. See Commonwealth v. Kimmel, 523 Pa. 107, 111, 565 A.2d 426, 427 (1989); see also 1 Pa.C.S. §1903(a) (stating that, unless statutory words and phrases have acquired a technical meaning, they "shall be construed according to . . . their common and approved usage"); cf. 18 Pa.C.S. §105 (indicating that the provisions of the Crimes Code should ordinarily "be construed according to the fair import of their terms").

In light of the above, a central issue is whether subsection (a)(1) is materially ambiguous. The subsection is set forth in full in the text above. In material part, it states that "[a]ny person who is convicted . . . of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years[.]" 42 Pa.C.S. §9714(a)(1). The Defender Association attempts to cast this language as either clearly supporting only a single sentence enhancement, or, at a minimum, reflecting an ambiguity requiring resort to the rule of lenity. The textual support for such contention is primarily found in the singular phrase, "a minimum sentence of at least ten years."

We do not agree that the singular nature of this phrase either reflects a legislative intention that only one of a series of crimes in a criminal episode be subject to the

---

(continued…)

from subsection (a)(1), but it did not separately analyze whether subsection (a)(1)'s text supported the same result.

mandatory minimum sentence, or is sufficient to create a genuine ambiguity. First, giving determinative weight to the singular nature of the word "a" would be in tension with the Statutory Construction Act. See 1 Pa.C.S. §1902 ("The singular shall include the plural, and the plural, the singular."). Additionally, a straightforward reading of the statutory text reveals that the sentence enhancement is required so long as the defendant meets two prerequisites: he previously committed a crime of violence, and his current offense is a crime of violence. Appellee independently satisfied both of these prerequisites as to all four crimes of violence he committed in 2002, and therefore, subsection (a)(1) requires that "a minimum sentence" be imposed upon him as to each. Unlike subsection (a)(2), moreover, subsection (a)(1) does not contain any separate limiting language that may be read to preclude such an outcome.

Finally, it seems likely that, if the General Assembly had intended the particularized result urged by Appellee – whereby, if a second-strike offender commits several crimes of violence in a single criminal episode, the sentencing enhancement applies to only one such crime and ordinary sentencing applies to the others – it would have made its intentions known via language directed to that circumstance. The General Assembly is certainly aware that a defendant may be sentenced for multiple crimes simultaneously. In the context of mandatory minimum sentencing, moreover, it has, on at least one occasion, acted to impose limitations upon multiple sentences where it favors such limitations. See 42 Pa.C.S. §9712.1(b) (with regard to mandatory minimum sentencing for drug offenses committed with a firearm, specifying that an aggregate sentence may not exceed the statutory maximum under the Controlled Substance, Drug, Device and Cosmetic Act). That the Legislature did not include in Section 9714 any restrictive language relative to multiple second-strike sentences

therefore supports our conclusion that an enhancement is required under that provision for each crime of violence committed as part of the offender's second strike.

Nor is our reading of subsection (a)(1) in substantial conflict with the recidivist-philosophy overlay that has been judicially superimposed onto Section 9714(a). Pursuant to that overlay, progressively harsher punishments are appropriate to one who, after being reproved and having a chance for reform, continues to engage in criminal activity. See Shiffler, 583 Pa. at 494-95, 879 A.2d at 195; Dickerson, 533 Pa. at 299, 621 A.2d at 992; Commonwealth v. Williams, 539 Pa. 249, 252, 652 A.2d 283, 284-85 (1994); see also Commonwealth v. Bradley, 575 Pa. 141, 157-58, 834 A.2d 1127, 1136 (2003) (Saylor, J., concurring). Reform opportunities, in this setting, are periods where the defendant serves a term of confinement and is then released. See McClintic, 589 Pa. at 483, 909 A.2d at 1252; Dickerson, 533 Pa. at 299, 621 A.2d at 992. The recidivist-philosophy thus clarifies how many strikes are represented by the defendant's criminal history, but it does not directly address the prospect of multiple sentencing enhancements at a particular level for more than one crime of violence committed as part of a single strike.[5] Although the McClintic majority found that cases applying the judicial overlay were helpful in informing the Court's reasoning in the subsection (a)(2) context, see McClintic, 589 Pa. at 478, 909 A.2d at 1249, it would be

---

[5] The recidivist philosophy applies in the present case to prevent Appellee from being sentenced as a third-strike offender on the basis that he committed multiple crimes of violence as part of his first strike, or that he committed multiple crimes of violence in the present criminal episode. A 25-year minimum sentence under subsection (a)(2) would therefore have been impermissible because Appellee had not previously served a period of incarceration representing the second strike. See supra note 1; see also Shiffler, 583 Pa. at 495, 879 A.2d at 195 ("We see nothing in the carefully graduated structure of Section 9714 to suggest that the General Assembly intended to require a sentencing court to simply skip a defendant's second strike and proceed to 'call him out' by applying three strikes.").

overly attenuated to employ the recidivist philosophy to avoid the purport of Section 9714(a)(1) as developed above.  See generally Williams, 539 Pa. at 252, 652 A.2d at 285 ("[T]he 'recidivist philosophy' possesses no authority which would override clearly contrary statutory language.").[6]

Accordingly, we hold that Section 9714(a)(1) of the Sentencing Code, 42 Pa.C.S. §9714(a)(1), requires that a second-strike offender be sentenced to the prescribed minimum term of incarceration for each conviction of a crime of violence that is part of the second strike.  Because this is what the common pleas court did, the Superior Court's order is reversed and the matter is remanded for reinstatement of Appellee's judgment of sentence.


Former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Castille, Mr. Justice Eakin, Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Justice Baer files a dissenting opinion.

---

[6] The Defender Association's argument that a single enhancement for each criminal episode would improve sentencing flexibility is more appropriately forwarded in a legislative forum.