J-S70003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALEX MOODY, | |
| Appellant | No. 3360 EDA 2014 |

Appeal from the Judgment of Sentence October 24, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0006293-2012

BEFORE:  DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED December 18, 2015**

Appellant, Alex Moody, appeals from the judgment of sentence imposed following his jury conviction of aggravated assault.[1]  Appellant challenges the sufficiency and the weight of the evidence supporting his conviction, and the trial court's jury instruction on reasonable doubt.  We affirm.

This case arises from Appellant's beating of his then girlfriend, during which Appellant, who is a bodybuilder, repeatedly punched, slapped, and choked her.  In its April 20, 2015 opinion, the trial court fully and correctly sets forth the factual and procedural history of this case.  (**See** Trial Court

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1).

Opinion, 4/20/15, at 1-7).[2]  Therefore, we have no reason to restate them here.

On appeal, Appellant raises three issues for our review:

I.  Is [Appellant] entitled to an arrest of judgment on the charge of [a]ggravated [a]ssault where the evidence was insufficient to sustain the verdict?

II. Is [Appellant] entitled to a new trial on the charge of [a]ggravated [a]ssault where[,] as here, the verdict was against the greater weight of the evidence?

III. Is [Appellant] entitled to a new trial as the result of the [t]rial [c]ourt's erroneous instruction on reasonable doubt?

(Appellant's Brief, at 3).

In his first issue, Appellant challenges the sufficiency of the evidence to support his aggravated assault conviction.  (**See id.** at 7-10).  In his second issue, he challenges the weight of the evidence, arguing that the jury's verdict shocks one's sense of justice.[3]  (**See id.** at 11-13).  In his third

---

[2] There is a typographical error in the court's opinion, stating that Appellant filed his notice of appeal on December 11, 2014; the docket reflects that Appellant timely filed it on December 2, 2014.  (**See** Trial Ct. Op., at 1; Criminal Docket, at 17).

[3] Appellant preserved his weight claim by raising it in his post-sentence motion.  **See** Pa.R.Crim.P. 607(A)(3); (**see also** Post-sentence motion, 10/29/14, at 1).  "[W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim."  **Commonwealth v. Boyd**, 73 A.3d 1269, 1275 (Pa. Super. 2013) (*en banc*) (citation omitted).

issue, Appellant concedes that the court gave the jury "the appropriate definition of reasonable doubt[,]" (*id.* at 13), but asserts that the court's additional instructions explaining the concept of reasonable doubt were inappropriate and confusing. (*See id.* at 13-15). After a thorough review of the record, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned opinion of the trial court, we conclude that Appellant's issues on appeal are meritless. The trial court properly disposes of the three questions presented. (*See* Trial Ct. Op., at 7-12, 16-17 (finding: (1) the physical evidence and testimony of the witnesses, viewed in the light most favorable to the Commonwealth, were sufficient to support Appellant's conviction for aggravated assault; the victim's injuries were consistent with being hit and choked and she had visible scarring and injuries for months after the beating; (2) the jury's verdict was not so contrary to the evidence as to shock one's sense of justice; and (3) the court did not err in instructing the jury on reasonable doubt where it gave the standard instruction and the charge, read as a whole, adequately and accurately explained the law)).[4] Accordingly, we affirm the judgment of sentence on the basis of the trial court's opinion.

Judgment of sentence affirmed.

---

[4] Although the trial court opinion addresses six issues, only the three aforementioned were raised before this Court on appeal.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/18/2015</u>

S7 0 003-15

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :                    CP-51-CR-0006293-2012

v.                                                             :

ALEX MOODY                                          :                    **FILED**

                                                              :                    APR 2 0 2015

                              **OPINION**                                  **Post Trial Unit**

Rose Marie DeFino-Nastasi, J.

## PROCEDURAL HISTORY

On June 6, 2014, the Defendant was found guilty after a jury trial, presided over by Honorable Rose Marie DeFino-Nastasi, of Aggravated Assault, 18 Pa.C.S. § 2702, as a felony of the first degree. Notes of Testimony (N.T.) 6/6/14 at pp. 41-45.

On October 24, 2014, the Defendant was sentenced to ten (10) to twenty (20) years for the Aggravated Assault conviction, pursuant to 42 Pa.C.S. § 9714, the statute for sentences for second and subsequent offenses. The Defendant had a prior conviction for Robbery, CP-51-CR-0527001-1989, 18 Pa.C.S. § 3701, as a felony of the first degree.

On November 7, 2014, the court denied the Defendant's Post Trial Motion without a hearing.

On December 11, 2014, the Defendant filed the instant appeal to the Superior Court of Pennsylvania.

On December 31, 2014, defense counsel filed a Statement of Matters Complained of on Appeal, pursuant to an order of the Court, claiming that:

1. There was insufficient evidence to sustain the jury verdict for Aggravated Assault.

2. The verdict was not supported by the weight of the evidence.

1

3. The sentencing court erred in imposing a mandatory sentence, pursuant to 42 Pa.C.S. § 9714 (Sentences for second and subsequent offenses) because the Commonwealth did not prove the elements of the statute, and the Defendant was not in a status that would make him eligible for the mandatory sentence.

4. The trial court erred in denying the Defendant's Motion for Mistrial based on two comments made by the prosecutor in closing argument. N.T. 6/5/14 at pp. 166, 182, 188.

5. The trial court erred in denying defense counsel's proposed jury instruction on "prompt complaint." N.T. 6/6/14 at pp. 2-3.

6. The trial court erred where the Court gave, as defense counsel states, "an erroneous instruction on the issue of reasonable doubt, where the Court, inappropriately, narrowed the concept of reasonable doubt with inappropriate examples or, at the very least, examples that were not broad enough giving the jury the choice to find reasonable doubt." N.T. 6/6/14 at p. 37.

## FACTS

At approximately 11:00 P.M. on February 1, 2012, a verbal argument over money erupted between the Defendant and his then-girlfriend, Carolyn Ransom ("Complainant"), at the Defendant's residence on Tioga Street. The Complainant testified that the Defendant and she purchased beer and fifteen (15) bags of crack/cocaine in the afternoon on the day of the incident; she smoked (6) bags. Later that evening, the Defendant asked the Complainant for money to purchase more crack/cocaine. When the Complainant responded that she did not have any, the Defendant began to slap, punch, and choke her. N.T. 6/4/14 at pp. 92-93, 105-07.

2

The Complainant testified that the Defendant slapped her in the face as she was seated on his bed, and then pulled her to standing by her neck. She tried to scratch the Defendant in an effort to loosen his hands. *Id.* at pp. 93, 143-44. As the Complainant struggled to breathe, the Defendant continuously slapped and punched her, repeatedly calling her a "mother fucker" and a "bitch." *Id.* at p. 94. The Defendant hit the Complainant in the eye; he then retrieved some ice from the kitchen. The Complainant testified that when the Defendant returned, he pressed the ice on her face with such force she thought the ice cube would go through her eye socket. *Id.* at pp. 93-95.

The Defendant then told her to take her clothes off "because he wanted some." When the Complainant expressed that she did not want to have sex, the Defendant took off her clothes and penetrated her. *Id.* at pp. 95-96. The Defendant penetrated the Complainant three times on the night of the incident. *Id.* at pp. 96-98.[1]

The Complainant testified that she tried to leave the house the next morning for a doctor's appointment. When she went to get dressed, the Defendant said to her: "get your shit off and get back in the bed before I fuck you up." *Id.* at pp. 107-08. She took everything off except her bra and panties.

The Complainant testified that she was very agitated because she felt that she was being held there against her will. *Id.* at p. 108. She waited until the Defendant was asleep before trying to leave the house again. *Id.* at p. 108. Once she heard the Defendant snoring, she grabbed her coat and put her clothes on in the kitchen. She then ran out of the house to the bus stop, continuously turning around to make sure the Defendant was not chasing her. *Id.* at pp. 108-09.

The Complainant took the bus to her case manager at 12th and Spring Garden Street; she did not go to her mother's house because the Defendant knew where her mother lived, and she

---

[1] The Defendant was charged with Rape and Sexual Assault and found not guilty.

3

was afraid the Defendant would try to find her there. *Id.* at pp. 113-15. Her case manager was not at that location, so she called her mother. The Complainant went straight to her mother's house and immediately called the police. She also called Detective Caswell, whom she had worked with when the Defendant hit her in December 2011. *Id.* at pp. 113-15.

The Complainant explained to police what transpired. *Id.* at p. 116. She was then transported to the Special Victims Unit, gave a statement, and photographs were taken. *Id.* at pp. 116-18. A sexual assault examination was conducted thereafter. *Id.* at pp. 118-20.

The Complainant further testified that she sustained multiple injuries and had visible scarring for months after the incident. Her injuries included fingerprint-shaped bruises on her neck from the Defendant choking her, a knot on her forehead, a black and blue eye, bruises on her arm and thighs, a cut on her cheek, and a bald spot on her head where the Defendant had pulled her hair. *Id.* at pp. 99, 120-23. She also testified that she now experiences headaches as a result of the Defendant beating her. *Id.*

Police Officer Robert Condart testified that he met with the Complainant on February 2, 2012, and filled out a domestic violence report and special victims memo. N.T. 6/4/14 at pp. 65-68. Officer Condart testified that the Complainant appeared scared; he observed that she had a swollen left eye, bruising and scratching on her neck consistent with being choked, and a busted lip. *Id.* at pp. 68-72.

Officer Condart testified that the Complainant reported to him that the Defendant had physically and sexually assaulted her because she refused to give him money. *Id.* at p. 69. She complained of pain in her vaginal area, and stated that the Defendant pushed her on her back, removed her underwear, and vaginally penetrated her several times over a period of time. *Id.* at pp. 69-70.

Detective Thomas Brown of the Special Victims Unit testified that he was the assigned investigator in this case, and that he documented and photographed the Complainant's injuries. N.T. 6/5/14 at pp. 64-73. He observed that she had severe injuries to her eye, face, and scratches on her neck. *Id.* at p. 73.

Joseph Kelly, a forensic nurse at the Philadelphia Sexual Assault Response Center, testified that he conducted an external examination of the Complainant on February 2, 2012. N.T. 6/5/14 at pp. 30-34. Mr. Kelly testified that he documented tenderness on her scalp from her hair being pulled, bruising and swelling around her left eye and facial cheek, abrasions to her nose, a small tear on her lower lip, tenderness over her neck with multiple scratches, abrasions and erythema, and bruises on both her upper arms with tenderness. *Id.* Her injuries were consistent with being hit, strangled, and choked. *Id.* at pp. 36-37.

Mr. Kelly testified that he also conducted a genital examination. The Complainant had tenderness on both vaginal walls, labia majora, labia manora, and a one-half (½) centimeter tear on the posterior fourchette. *Id.* at pp. 42, 46, 52.

Mr. Kelly testified that he forensically collected samples for possible genetic material extraction after both examinations. *Id.* at p. 53.

Counsel stipulated that the samples from the rape kit were analyzed by qualified Forensic Scientist, Gamal Emira. N.T. 6/5/14 at pp. 85-86. The samples from the rape kit were submitted to the Philadelphia Forensic Science Division for DNA analysis. The sperm that was located on those samples was compared to the oral swabs taken from the Defendant. The Defendant was identified as the source of the DNA from the sperm recovered in the rape kit. *Id.* at pp. 88-90.

The Defendant testified that he purchased eighteen (18) nickel bags of crack for $75.00 on the day of the incident. N.T. 6/5/14 at p. 107. The Complainant and he smoked about three (3)

bags each. *Id.* at p. 108. The two went shopping and returned home around 4:00-4:30 P.M. *Id.* at p. 109-10. The Defendant wanted to purchase a dime bag of crack/cocaine and asked the Complainant for $10.00 because he had left his money at the house. *Id.* at pp. 111-12. She asked the Defendant to pick up two bags for her and handed him $30.00. *Id.*

The Defendant conceded that he was intoxicated most of the day. *Id.* at pp. 114-15. The Defendant testified that he drank two or three tall, 16 ounce cans of Budweiser on the day of the incident, and that he was high from the combination of smoking crack/cocaine and drinking beer. *Id.* at p. 114.

The Defendant testified that the Complainant and he began to verbally argue on the day of the incident because the Defendant gave a female friend crack/cocaine and beer. *Id.* at p. 117-18. The Defendant testified that the argument between the two turned physical. *Id.* at p. 119. The Complainant finished her bag of crack/cocaine then pushed the Defendant's head two times and put ashes on him. *Id.* The Defendant got up, pushed the Complainant, and told her to stop hitting him. The Defendant testified that after he pushed her, he smacked her twice in the face with an open hand. *Id.* at pp. 120-21. The Complainant tried to push herself away from the Defendant, so he grabbed her two or three times. *Id.*

The Defendant testified that he has big hands and could have caused the swelling to the Complainant's face. *Id.* at pp. 121-22. He also testified that after he saw the scratch on the her face from smacking her, he got ice and a rag and blotted her face. *Id.* at p. 122.

The Defendant testified that the Complainant and he had sex one time in the morning of the day of the incident. *Id.* at p. 111. The Defendant testified that they did not have sex after their argument, that the Complainant was still in his house when he fell asleep, and that she left around 7:45-8:00 A.M. the following morning. *Id.* at pp. 123-24.

On cross-examination, the Defendant stated that he could have caused the finger-shaped bruising and scratching to the Complainant's neck because he grabbed her and he has large hands. *Id.* at pp. 129-30. He also testified that he grabbed her a couple times and when he did, he applied slight pressure. *Id.* at p. 131.

The Defendant stated that he has been bodybuilding since he was thirteen (13) years-old and that he is much stronger and bigger than the Complainant. *Id.* at pp. 131-32. The Defendant conceded that he could have caused the bruising, swelling, and cuts to her throat. *Id.* at p. 132. He also stated that she got a black eye when he smacked her on a prior occasion. *Id.* at p. 137.

## ANALYSIS

### Issue 1

In his Rule 1925(b) statement, Defendant contends that there was insufficient evidence to sustain the verdict of guilt for Aggravated Assault. This contention is without merit, as there was sufficient evidence to support the Defendant's conviction in the trial record.

It is well established that the test for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all proper inferences favorable to the Commonwealth, the trier of fact could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Com. v. Matthew,* 909 A.2d 1254, 1257 (Pa. 2006). In applying this standard, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *Com. v. Galvin,* 985 A.2d 783, 789 (Pa. 2009) (citing *Com. v. Cousar,* 928 A.2d 1025, 1032 (Pa. 2007)). Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Com. v. Martuscelli,* 54 A.3d 940, 947 (Pa. Super. 2012) (*Com. v. Badman,* 580 A.2d 1367, 1372 (Pa. Super. 1990) (citation omitted)). Additionally, the trier of

fact, while passing on the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. *Cousar*, 928 A.2d at 1032-33.

The Defendant was convicted under 18 Pa.C.S. § 2702(a)(1), which provides: "A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . ." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Where, as here, the Complainant does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. *Martuscelli*, 54 A.3d at 948. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). An attempt under § 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. *Com. v. Fortune*, 68 A.3d 980, 985 (Pa. Super.), app. denied, 78 A.3d 1089 (Pa. 2013) (citing *Matthew*, 909 A.2d at 1254); *Com. v. Alford*, 880 A.2d 666, 670-71 (Pa. Super. 2005). "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result." *Matthew*, 909 A.2d at 1257-58. Intent can be proven by direct or circumstantial evidence. *Com. v. Hall*, 830 A.2d 537, 542 (Pa. 2003); *See Com. v. Dailey*, 828 A.2d 356 (Pa. Super. 2003) (finding defendant's two closed-fist punches to the Complainant's head, rendering the Complainant dazed

8

and helpless, after which defendant approached the Complainant aggressively, ready to deliver another punch, sufficiently showed an intent to inflict serious bodily injury).

The Pennsylvania Supreme Court in *Com. v. Alexander*, 383 A.2d 887 (Pa. 1978), created a totality of the circumstances test to be used to evaluate whether a defendant acted with the necessary intent to sustain an aggravated assault conviction. In *Matthew*, the Supreme Court reaffirmed the test and articulated the legal principles which apply when the Commonwealth seeks to prove aggravated assault by showing that the defendant attempted to cause serious bodily injury. Specifically, the Court stated, in relevant part, that:

> *Alexander* created a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. *Alexander* provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. *Alexander*, at 889. *Alexander* made clear that simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault.

*Fortune*, 68 A.3d at 984 (quoting *Matthew*, 909 A.2d at 1257 (citation and quotation marks omitted)).

The physical evidence and testimony of the witnesses, viewed in the light most favorable to the Commonwealth, were sufficient to support the Defendant's conviction for Aggravated Assault. The jury was charged on Aggravated Assault, Attempt to Cause Serious Bodily Injury, and properly found that the Defendant engaged in intentional conduct that constituted a substantial step toward causing serious bodily injury to the Complainant. N.T. 6/6/14 at pp. 24-28.

There was sufficient evidence to find that the Defendant attempted to inflict serious bodily injury upon the Complainant. Unlike in *Alexander,* wherein our Supreme Court concluded that evidence that the defendant delivered one punch to the Complainant's head, which resulted in a broken nose, and then walked away, was insufficient to sustain his conviction for aggravated assault, the instant circumstances may be distinguished.

The facts testified to by the Complainant established sufficient evidence for the jury to conclude that the Defendant possessed the requisite intent to inflict serious bodily injury upon the Complainant. The Defendant slapped the Complainant in the face and then pulled the Complainant from a seated position to standing by her neck. As the Complainant struggled to breathe, the Defendant continued to choke the Complainant with two hands around her neck, slap her, and punch her in the eye. The Complainant testified that after the Defendant hit her in the eye, he grabbed ice and pressed it on her face so hard that she thought the ice cube would go through her eye socket. N.T. 6/4/14 at pp. 92-95.

Also probative of the Defendant's intent is the relative size of the Complainant and the Defendant. This Defendant testified that he has been bodybuilding since the age of thirteen, that he was significantly stronger and larger than the Complainant, that he had large hands, and consequently, that he could have caused the bruising, swelling, and cuts to the Complainant's

throat. The Complainant's testimony regarding the finger-shaped bruising around her neck was buttressed by the Defendant's own testimony that he applied slight pressure each time he grabbed the Complainant by her neck. N.T. 6/5/14 at pp. 129-37.

The jury, as fact-finder, viewed photographs of the Complainant taken shortly after the incident and heard testimony that the Complainant's injuries were consistent with being hit, strangled, and choked. N.T. 6/5/14 at pp. 36-37. The Complainant testified that she had visible scarring and injuries for months after the incident, including marks on her neck as a result of the Defendant choking her. *Id.* at pp. 131-32. Reports from an external examination of the Complainant shortly after the attack evinced bruising and swelling around her left eye and check, abrasions to her nose, a tear on her lower lip, tenderness of the scalp from her hair being pulled, and abrasions and erythema on her neck. A genital examination revealed that the Complainant suffered a tear at the bottom of the entrance to her vagina. This evidence was sufficient to establish beyond a reasonable doubt that the Defendant attempted to inflict serious bodily injury upon the Complainant.

In applying the totality of the circumstances approach as *Matthew* dictates, the Defendant's claim that there was insufficient evidence to sustain his conviction for Aggravated Assault must fail.

### Issue 2

The Defendant claims that the evidence at trial was against the weight of the evidence to support a verdict of guilt for Aggravated Assault.

"Unlike the challenge of legal sufficiency of the evidence, the complaint that the verdict was against the weight of the evidence requires an assessment of the credibility of the testimony offered by the Commonwealth." *Com. v. Jenkins,* 578 A.2d 960, 962 (Pa. 1990) (citing *Com. v.*

11

*Brantner*, 406 A.2d 1011, 1013 (Pa. 1979)). A challenge "that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." *Com. v. Manchas*, 633 A.2d 618, 622-23 (Pa. Super. 1993) (quoting *Com. v. Taylor*, 471 A.2d 1228, 1230 (Pa. Super. 1984)).

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Com v. Small*, 741 A.2d 666, 672-73 (Pa. 1999). Relief may be granted on a weight of the evidence claim only if the verdict was "so contrary to the evidence as to shock one's sense of justice and make the award of new trial imperative." *Com. v. Fletcher*, 861 A.2d 898, 908 (Pa. 2004). Moreover, it is exclusively in the province of the trier of fact to determine the weight and credibility to be given evidence submitted at trial. *Com. v. Hanible*, 836 A.2d 36, 40 (Pa. 2003). This Court cannot substitute its judgment for that of the jury on issues of credibility. *Com. v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006).

It was the function of the jury as the fact finder to evaluate the evidence and determine the weight it should be given. The Commonwealth presented five witnesses, including the Complainant. The jury evidently found the Commonwealth's witnesses credible and chose not to believe the Defendant's version of the events. There is no evidence that the judgment of the jury was so contrary to the evidence as to shock one's sense of justice. Therefore, this issue fails.

### Issue 3

The Defendant next asserts that the sentencing court erroneously imposed a mandatory sentence, pursuant to 42 Pa.C.S. § 9714, Sentences for second and subsequent offenses, because

the Commonwealth did not prove the elements of the statute, and the Defendant was not in a status that would make him eligible for such a mandatory sentence.

Section 9714 of the Sentencing Code provides, in relevant part:

(a) Mandatory sentence.

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence . . .

42 Pa.C.S. § 9714(a)(1); *Com. v. Fields*, 107 A.3d 738, 744 (Pa. 2014).

The Defendant was subject to a statutory enhancement under the second-strike provision of the recidivist sentencing statute. N.T. 10/24/14 at pp. 2-23. The Defendant had a prior conviction for Robbery, 18 Pa.C.S. § 3701, as a felony of the first degree. (CP-51-CR-0527001-1989). Section 9714(g) defines "crime of violence" to include robbery and aggravated assault. 18 Pa.C.S. § 9714(g). The statute applies retroactively to prior convictions which occurred before its enactment. *Com. v. Henderson*, 938 A.2d 1063, 1067 (Pa. Super. 2007) (citing *Com. v. Smith*, 866 A.2d 1138 (Pa. Super.), app. denied, 877 A.2d 462 (Pa. 2005)).

The Commonwealth provided reasonable notice of its intention to proceed under the statute after conviction and before sentencing. 18 Pa.C.S. § 9714(d); *See* June 9, 2014, Notice of Intent to Seek Mandatory for 2nd or 3rd Strike. Evident from the trial record, the Commonwealth proved the requisite elements of the statute. This claim is without merit.

## Issue 4

The Defendant next contends the trial court erred when it denied the Defendant's Motion for Mistrial based on statements made in the Commonwealth's closing argument. N.T. 6/5/14 at p. 188. No relief is due.

It is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Fletcher*, 861 A.2d at 916 (quoting *Com. v. Stokes*, 839 A.2d 226, 230 (Pa. 2003)). Like the defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury. *Com. v. Williams*, 896 A.2d 523, 542 (Pa. 2006) (citations omitted). Prosecutorial misconduct will not be found where the comments were based on the evidence or derived from proper inferences. *Com. v. Chester*, 587 A.2d 1367, 1377 (Pa. 1991), cert. denied, 502 U.S. 959 (1991) (citations omitted). In addition, any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. *Com. v. Hutchinson*, 25 A.3d 277, 307 (Pa. 2011).

The Defendant asserts that the prosecutor impermissibly vouched for the truthfulness of Commonwealth witness' testimony on two occasions during closing argument. N.T. 6.5.14 at p. 188. In the first instance, defense counsel objected when the prosecutor argued:

> **MS. KEMP:** . . . this should not be based on prejudice or bias. This needs to be
> based on the facts and the facts of this case came from Miss Ransom because, as
> she testified, this woman was honest to a fault.

N.T. 6/5/14 at pp. 166-67.

14

The prosecutor's argument was a fair response to comments made by defense counsel during closing regarding the credibility of the Complainant's testimony, e.g. that her testimony did not make sense and that portions of her testimony were "absolute[] crap." *See* N.T. 6/5/14 at pp. 145-54. Therefore, this claim of prosecutorial misconduct fails.

Defense counsel also objected during closing argument to the following:

**MS. KEMP**: . . . [Y]ou see that in her testimony and in the photographs and aside from that, her busted eye, the bruising to the rest of her body, which is consistent with what Miss Ransom said happened, not what the Defendant said happened, that maybe he applied slight pressure for a second but really she was the one who was smacking him. Those photographs are not consistent with his story because his story is not the facts. His story is not the truth. The evidence showed her story is . . . My opinion is irrelevant. It is your opinion that matters. It is the evidence that matters. The evidence shows who assaulted who.

N.T. 6/5/14 at pp. 181-82.

The prosecutor's argument was a reasonable inference from evidence in the record and therefore proper. The prosecutor was not diverting the jury from deciding the case on the evidence; rather she was imploring the jury to do so. *Com. v. Judy*, 978 A.2d 1015, 1028 (Pa. Super. 2009).

None of the comments made by the prosecutor during closing were of the type or kind to have the unavoidable effect to prejudice the jurors by forming in their minds a fixed bias and hostility in such manner as to impede their ability to weigh the evidence objectively and render a true verdict. The allegations of prosecutorial misconduct are without merit. Moreover, the jury was properly instructed that arguments of counsel were not evidence and that it was their task

15

and their task alone to pass upon the credibility of the witnesses. N.T. 6/5/14 at p. 140. The jury is presumed to have followed such instruction. *Judy,* 978 A.2d at 1028.

## Issue 5

The Defendant's claim that the trial court erred in refusing to charge on "prompt complaint" is without merit. The jury returned not guilty verdicts on all sexual assault charges. This claim is moot.

## Issue 6

The Defendant lastly contends that "the Court gave an erroneous instruction on the issue of reasonable doubt, where the Court, inappropriately, narrowed the concept of reasonable doubt with inappropriate examples or, at the very least, examples that were not broad enough giving the jury the choice to find reasonable doubt." *See* N.T. 6/6/14 at pp. 9-11, 37-39. The trial court did not err.

The Court gave the standard jury instruction on Reasonable Doubt pursuant to §7.01 of the Pennsylvania Suggested Standard Criminal Jury Instructions, Second Edition with 2014 Supplement, then charged as follows:

What I tell people, ladies and gentlemen, is this, if a reasonable, sensible person were making a really important life decision, not what to eat or what to wear obviously, that is an everyday decision, not even a big decision that you can fix or change later, go back and take care of. You buy a car. It is a lemon, no. Even if you buy a house and there is a problem with it. It is a life-changing decision, like very serious surgery, the kind of decision that is really going to alter this person's life. If that reasonable, sensible person gathered the information to help them to make this decision, deliberated upon it, considered the pros and cons, good points,

16

bad points, but then in the end of that process, paused, hesitated, could not go forward in acting on that decision, we call that a reasonable doubt and if you thought that way after you deliberated, you would have to find the Defendant not guilty.

N.T. 6/6/14 at pp. 9-11.

When reviewing a jury instruction, the appellate court is required to look at the instruction as a whole in order to determine if what was said was fair or prejudicial. *See Com. v. Hawkins,* 787 A.2d 292 (Pa. 2001). "If the Court's charge read as a whole is accurate and fair and contains no basic or prejudicial error, it will be sustained even though isolated excerpts taken therefrom are or might be objectionable." *See Com. v. Kloiber,* 106 A.2d 820, 824 (Pa. 1954). The trial court is not relegated to follow a particular phraseology when formulating the charge to the jury, but has broad discretion in wording its instructions, so long as the wording clearly, adequately, and accurately expresses the state of the law. *Hawkins,* 787 A.2d at 301; *Com. v. Brown,* 786 A.2d 961, 966 (Pa. 2001), cert. denied, 537 U.S. 1187 (2003).

Reviewing the charge in its entirety, the instruction adequately and accurately explained the law to the jury. The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law. *Id.* N.T. 6/6/14 at pp. 38-39.

## CONCLUSION

Based on the foregoing, the judgment of sentence of the trial court should be affirmed.

By the Court;

Rose Marie DeFino-Nastasi, J.

17