J-S74008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUSTIN DIPANFILO | : | |
| | : | |
| Appellant | : | No. 1004 EDA 2017 |

Appeal from the Judgment of Sentence March 23, 2017
In the Court of Common Pleas of Montgomery County Criminal Division at
No(s):  CP-46-CR-0009378-2012

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 15, 2018**

Justin DiPanfilo appeals from the judgment of sentence of eleven to twenty-two years incarceration plus five years probation, imposed following a bench trial wherein he was convicted of burglary, his second such crime of violence, criminal trespass, simple assault, theft by unlawful taking, receiving stolen property, possessing an instrument of crime, and attempted theft by unlawful taking.  We affirm.

On November 13, 2012, Appellant was released from a term of one to three years imprisonment at the Montgomery County Correctional Facility for an offense unrelated to this matter.  At approximately 2:30 p.m., on November 14, 2012, Janette Kauffman returned to her home in Montgomery Township, Montgomery County.  Upon pulling her car into the garage, Ms. Kauffman observed that a door leading from the garage into her laundry room was ajar.  She saw Appellant within her laundry room, and after Ms.

Kauffman asked who he was, Appellant replied that he was there to rob her. After Appellant attempted and failed to close the garage door intending to trap Ms. Kauffman within, he assaulted her. At the same time, a landscaper, Matthew Young, working nearby, overheard Ms. Kauffman screaming. Mr. Young proceeded to Ms. Kauffman's driveway, where he witnessed a scuffle between Appellant and Ms. Kauffman. He immediately called the police. Subsequently, Appellant fled from the area, followed closely by Mr. Young, who remained on the line with emergency services detailing Appellant's whereabouts.

Shortly thereafter, police officers arrived, located Appellant, and arrested him. During a search incident to arrest, the officers discovered on Appellant's person an iPod and gold necklace belonging to Ms. Kauffman. A detective then drove Ms. Kauffman to the scene of the arrest, where she positively identified Appellant as the individual she encountered in her garage. Detectives also investigated the interior of Ms. Kauffman's house, wherein they found evidence of a forced entry through a rear kitchen window and a large amount of personal property, which had been sorted and placed into piles and pillowcases. Numerous rooms were ransacked.

Based on the foregoing, Appellant was charged with the above-enumerated offenses and other related crimes. Trial was delayed until the court determined that Appellant was mentally fit for trial. Following a bench trial on December 14, 2015, Appellant was convicted of the crimes noted above. On December 18, 2015, the Commonwealth filed its notice of intent

to seek a mandatory sentence pursuant to 42 Pa.C.S. § 9714, based on Appellant's prior conviction for a crime of violence.[1]  On March 23, 2016, the court, utilizing, in part, a mandatory minimum sentence of ten to twenty years incarceration resulting from Appellant's second conviction for a crime of violence, imposed an aggregate sentence of eleven to twenty-two years imprisonment, followed by five years probation.

At this point, the procedural history becomes somewhat convoluted. Of import herein, on February 7, 2017, the trial court filed an order reinstating Appellant's post-sentence motion and direct appeal rights following Appellant's successful petition filed pursuant to the Post-Conviction Relief Act.  Appellant filed a post-sentence motion, which, after a hearing, the trial court denied.  He filed a timely notice of appeal, and complied with the trial court's order to file a 1925(b) concise statement of errors complained of on appeal.  The trial court authored its Rule 1925(a) opinion, and this matter is now ready for our review.

Appellant raises a single question for our consideration:  "Did the Trial Court err in sentencing [Appellant] as a multiple 'strike' offender when [Appellant] had not been released from incarceration for a sufficient time to have benefited from rehabilitation opportunities?"  Appellant's brief at 5.

---

[1] On November 7, 2003, Appellant pled guilty to one count of burglary and one count of recklessly endangering another person, for which he received a sentence of one and one-half to three years incarceration, plus two years probation.

Appellant's issue challenges the legality of his sentence. We observe,

> The scope and standard of review applied to determine the legality of a sentence are well[-]established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Armstrong***, 74 A.3d 228, 239 (Pa.Super. 2013) (citation omitted).

The Sentencing Code provides, in pertinent part:

(a)   Mandatory sentence.--

> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title of other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

42 Pa.C.S. § 9714(a).

First, Appellant notes that, in the past nine years, he has remained incarcerated for all but seventeen days in June to July of 2009. Moreover, he spent the vast majority of time between 2003 and 2009 incarcerated. Relying on ***Commonwealth v. Laverette***, 911 A.2d 998, 1004 (Pa.Super. 2006), he maintains that a person must have an "opportunity to reform"

before the mandatory minimum provisions contained within § 9714 can be applied. Appellant asserts that such an opportunity to reform must occur "outside of supervision or incarceration[.]" Appellant's brief at 12. Specifically, he contends that the trial court erred in finding that he had sufficient time to reform his behavior for the purposes of § 9714 while he was in prison. In this vein, he argues that the court's presumption that a person with significant mental health issues "is somehow capable of being reformed while incarcerated is simply unjust and not in keeping with the recidivist philosophy outlined in [*Leverette*, *supra*.]" *Id*. at 12-13. Rather, Appellant continues, "[t]he rationale for the imposition of the mandatory sentencing scheme is to punish people more stringently if they have had a chance to resolve their behavior and have failed to do so." *Id*. at 13.

Appellant also assails the trial court's reliance on *Commonwealth v. Fields*, 107 A.3d 738 (Pa. 2014). In *Fields*, our Supreme Court noted that, for the purposes of § 9714, "[r]eform opportunities, in this setting, are periods where the defendant serves a term of incarceration and is then released." Appellant's brief at 13 (citing *Fields*, *supra* at 635). He argues that, since his crimes were committed less than twenty-four hours after his release, he was not "meaningfully 'released' with time to reform in between his first and second strikes." Appellant's brief at 14. Essentially, Appellant claims that a person must have some significant, but unstated, opportunity to reform while not incarcerated before a mandatory minimum sentence can

be applied. Hence, since he committed a second crime of violence less than twenty-four hours after being released from prison, and he was not afforded that opportunity, the trial court erred in imposing a mandatory minimum sentence pursuant to § 9714.

Instantly, we find that the case law interpreting § 9714 does not require that a person be afforded an opportunity to reform outside of prison before the application of a second strike mandatory minimum sentence. Rather, we find that the term of imprisonment is itself the opportunity to reform contemplated by the Sentencing Code.

As noted by Appellant, this Court in **Leverette**, **supra**, held that an individual must be provided an "opportunity to reform" between his first and second convictions in order for his sentence to be enhanced under § 9714. **Leverette**, **supra** at 1004. However, the missed opportunity to reform in **Leverette** resulted from the trial court's imposition of a third-strike sentence under 42 Pa.C.S. § 9714(a)(2),[2] without the defendant having first

_____

[2] In this regard, the Sentencing Code reads:

> (2) Where the person had at the time of the commission of the current offense the person had previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or

*(Footnote Continued Next Page)*

been sentenced to a second strike term of imprisonment under § 9714(a)(1).

In **Leverette**, this Court held that the trial court could not apply a third-strike mandatory minimum sentence without the defendant having first been sentenced for a second strike offense and its concomitant opportunity to reform. The lost opportunity to reform implicated by **Leverette** spoke more directly to rehabilitation undertaken while incarcerated without expressly finding, as Appellant would have us find, that rehabilitation must be undertaken outside of confinement before § 9714 may be applied. Indeed, we observed, "[a]s to the recidivist philosophy, this and other Pennsylvania appellate courts have repeatedly recognized that, 'the point of sentence enhancements is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of **penal discipline**.'" **Leverette**, *supra* at 1003 (citing **Commonwealth v. Shiffler**, 879 A.2d 185, 195 (Pa. 2005) (emphasis added)).

*(Footnote Continued)* ———————————

> subsequent crime of violence the court may, if it determines that 25 years or total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S. § 9714(a)(2). The Supreme Court affirmed a decision by this Court holding that the mandatory minimum sentencing provisions contained within § 9714 were constitutional. **See Commonwealth v. Bragg**, 133 A.3d 328 (Pa.Super. 2016) *affirmed*, 179 A.3d 1024 (Pa. 2017).

In addition, our High Court in *Fields*, *supra*, which held that a defendant was subject to an enhanced sentence for each crime of violence committed during a single criminal transaction, discussed the opportunity to reform, stating

> Nor is our reading of subsection (a)(1) in substantial conflict with the recidivist-philosophy overlay that has been judicially superimposed onto Section 9714(a). Pursuant to that overlay, progressively harsher punishments are appropriate to one who, after being reproved and having a chance for reform, continues to engage in criminal activity. Reform opportunities, in this setting, are periods where the defendant serves a term of confinement and is then released.

*Fields*, *supra* at 635 (citations omitted).[3] Elsewhere, the Supreme Court has delineated the temporal framework applicable to § 9714, explaining, "[i]n cases of recidivism, we expect the following sequence of events: first offense, first conviction, first sentencing, second offense, second conviction, second sentencing." *Shiffler*, *supra* at 192 (citing *Commonwealth v. Dickerson*, 590 A.2d 766, 771 (Pa.Super. 1991)). This is exactly the sequence of events we face now, despite Appellant's protestations to the contrary.

---

[3] Our conclusion that the opportunity to reform contemplated by § 9714 refers to the time an individual spends in prison is further bolstered by the philosophic underpinnings of our system of criminal justice. *Commonwealth v. Williams*, 652 A.2d 283, 285 n.1 (Pa. 1994) (noting "five broad purposes of the penal system: protection of society, general deterrence . . ., individual deterrence, **rehabilitation**, and retribution." (emphasis added)).

We find that the application of § 9714 to Appellant's 2012 conviction does not run afoul of the framework provided above. It is undisputed that Appellant committed a first strike offense in 2003. He was initially released from his term sentence in 2006. After violating his probation, he was resentenced to a term of imprisonment, from which he was ultimately released in 2009. Appellant then served additional time in prison from 2009 to 2012 for an unrelated offense that did not constitute a crime of violence under § 9714. Following his release from prison for the unrelated offense, Appellant committed the second strike offense at issue herein. That Appellant committed this offense within twenty-four hours of his release is irrelevant, as he enjoyed ample time while incarcerated between 2003 and 2012 to take advantage of the rehabilitative opportunities open to him. As such, we find the trial court did not err in imposing a sentence of ten to twenty years incarceration after it convicted Appellant of burglary, his second crime of violence. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/18