J-A28042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EMILIO J. RIVERA | : | |
| | : | |
| Appellant | : | No. 1662 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 23, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0014290-2011

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED FEBRUARY 23, 2021**

Emilio J. Rivera (Appellant) appeals from his judgment of sentence imposed by the Court of Common Pleas of Allegheny County after his convictions before a jury of burglary, robbery with serious bodily injury, four counts of unlawful restraint, and four counts of reckless endangerment of another person (REAP).[1]  He brings twenty-two claims of error.  For the reasons outlined **infra**, we affirm.[2]

> A.     Did the Commonwealth violate Appellant's rights as protected by **Brady**[3] and progeny when it failed to provide exculpatory discovery which would have shown that Detective

---

[1] 18 Pa.C.S. §§ 3502, 3701(a)(1)(i), 2902(a) and (b), and 2705.

[2] Appellant's direct appellate rights were reinstated *nunc pro tunc* after the trial court heard his initial, timely petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546 (PCRA).

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

Sherwood promised favorable treatment to the Commonwealth's key witness, Mr. Sean Ball, who committed perjury at trial by claiming he had not been promised leniency; given that numerous individuals were identified as the suspect in this offense prior to Appellant being targeted, and given that one of the victims in this crime was a police officer, presumably heightening the investigators' eagerness to solve the crime, it is averred that Mr. Ball's testimony was critical to the prosecution's theory, and thus depriving the Defense of meaningful evidence shedding light on Mr. Ball's credibility and veracity constituted reversible error?

B.     Did the trial court improperly admit evidence derived from the illegal wiretap of Sean Ball, given that (a) Deputy District Attorney failed to comply with the Wiretap Act by, *inter alia*, failing to obtain the required authorization given that part of the intercepted communications occurred inside [Appellant's] residence, triggering the requirements of 18 Pa.C.S. § 5704(2)(4) and (b) the agents involved with the electronic surveillance were not the authorized agents to do so?  Where the Memorandum of Request of August 1, 2011 specifically stated that the following individuals would conduct the interception:  Jason Binder, John Love, Mike Feeney, and Thomas Foley, all with the Allegheny County Police.  However, the reports in this matter make clear that other, not-authorized individuals were involved in some of the interceptions, namely, Special Agent Ryan Rennig of the ATF, Special Agent Frank Vezio of the DEA and Agent Robert Iuzzolino of the Pennsylvania Office[ ] of the Attorney General.  This involvement of non-authorized agents to intercept communications, an interception tightly regulated by applicable statutory law, invalidated the seizure of the information derived from these interceptions, requiring suppression of the evidence obtained from those invalid interceptions and also tainting subsequent investigation into this case[?]

C.     Was the evidence presented at trial insufficient to prove beyond a reasonable doubt that Appellant was guilty of burglary, given that the evidence failed to prove beyond a reasonable doubt that Appellant entered a building or occupied structure with the intent to commit a crime therein?

D.     Was the evidence presented at trial insufficient to prove beyond a reasonable doubt that Appellant was guilty of Robbery where insufficient evidence showed that the conduct occurred in the course of committing a theft?

E.    Was the evidence presented at trial insufficient to prove beyond a reasonable doubt that Appellant was guilty of Robbery where insufficient evidence showed that he inflicted serious bodily injury [(SBI)] upon another or threatening another with or intentionally put[ting] him in fear of immediate [SBI]?

F.    Was the evidence presented at trial insufficient to prove beyond a reasonable doubt that Appellant was guilty of [REAP] where insufficient evidence showed that he placed another person in danger of death or [SBI]?

G.    Was the evidence presented at trial insufficient to prove beyond a reasonable doubt that Appellant was guilty of Unlawful Restraint where insufficient evidence showed that he restrained another unlawfully in circumstances exposing the alleged victim to risk of [SBI]?

H.    Were . . . Appellant's convictions against the weight of evidence, given that no [ ] forensic physical evidence – no DNA, no weapon, no fingerprints – connected Appellant to the crimes, given that the victim's identification was ever-changing and unreliable – in fact, she identified two other perpetrators in this case prior to allegedly identifying Appellant – and given that the keystone of the Commonwealth's case was based [on] wiretap evidence related to Sean Ball, although that wiretap evidence was illegally obtained and the defense was not provided a full and fair opportunity to cross[-]examine Mr. Ball during trial?

I.    Did the trial court err in admitting Appellant's incriminating statements made after he requested counsel?

J.    Did the trial court err in admitting Appellant's prior convictions at trial when said convictions improperly were used to impeach the credibility of witness Brandy Balogh?

K.    Did the trial court err in admitting a conversation between [Appellant] and Mr. Ball which suggested that Appellant did not want to go back to jail, which suggested he had been in jail before, thus introducing prior bad acts into the trial in violation of established evidentiary rules?

L.    Should the cases of [Appellant] and [co-defendant Marcus] Andrejco have been severed due to the prejudicial effect of

- 3 -

allowing evidence in to support Mr. Andrejco's defense which was overly prejudicial to [Appellant's] defense?

M.     Was Appellant deprived of his constitutional right to fully and effectively cross[-]examine Sean Ball at trial?

N.     Did the trial court err in admitting the suppression hearing testimony of Detective Langan, who was declared to be an unavailable witness at trial (due to illness) despite the fact that the Defense had not been given a full and fair opportunity to cross-examine him?

O.     Did Appellant receive an illegally enhanced sentence[ ] pursuant to 42 Pa.C.S. § 9714, when both violent [charges] – robbery and burglary – arose from a single criminal episode?

P.     Did Judge Mariani improperly require Attorney Rachael Santoriella to remove herself from the case which deprived [Appellant] of the attorney of his choice?

Q.     Did Judge Borkowski fail[ ] to recuse himself despite having had an acrimonious relationship with Defense Attorney Gettleman previously?

R.     Did the sentencing judge give inadequate consideration to the mandatory sentencing criteria, per 42 Pa.C.S. §§ 9721 and 9725?

S.     Did the sentencing judge give [ ] disproportionate [ ] weight to the nature and facts of the crime?

T.     Did the sentencing judge give inappropriate consideration to the harm incurred by Officer Kuzak given that the jury's verdict suggested that it did not believe that Appellant was involved in shooting the officer?

U.     Did the trial court improperly impose the sentences for burglary and robbery to run consecutively?

V.     Did the trial court impose a manifestly excessive aggregate sentence?

Appellant's Brief at 16-20.

The trial court summarized the facts adduced at trial as follows:

On April 4, 2011, Tasha Grayson and Keith Mullen were watching television at home while their two children slept upstairs, at 858 Miller Avenue in the City of Clairton, Allegheny County. At approximately 10:30 P.M., Grayson and Mullen heard a loud bang in the kitchen, which Mullen investigated. While Mullen was looking out the back window, a man started banging on the kitchen door, yelling, "This is the FBI. Open up." Mullen went to the basement to get their dog and Grayson went upstairs to the kids' room.

As the man outside continued to knock, Mullen opened the door, and Appellant and an accomplice pushed their way into the home. Appellant and his accomplice turned Mullen around and the accomplice put a gun to Mullen's head. Appellant went upstairs and brought Grayson and her children downstairs at gunpoint. Appellant met his accomplice in the kitchen, and they forced everyone down into the basement at gunpoint. Once in the basement Appellant ordered everyone to [lie] on their stomachs. Appellant and his accomplice looked around the basement for drugs, knowing that Mullen sold cocaine from the house. Appellant found Mullen's bag of cocaine on top of the refrigerator, but Appellant's accomplice became agitated and demanded money and more drugs. Mullen responded that was all he had, and "I don't have that stuff." In response Appellant grabbed their four year old daughter and put a gun to her head, asking Mullen, "Do you love her?" Appellant next grabbed Grayson by the neck, put the gun in her mouth, and asked Mullen, "Do you love her?" Mullen again stated that he did not have what they wanted, but Grayson told Appellant, "I have some money upstairs on the side of my bed, take it and go."

Appellant ran upstairs and searched the bedroom but returned after a few minutes and Appellant and his accomplice ordered everyone up to the children's room. Appellant's accomplice hit Mullen in the head several times with his revolver until Grayson yelled at him to stop and she would show them where the money was. Appellant's accomplice brought Mullen back down to the basement at gunpoint. Appellant grabbed Grayson by the shirt and took her to her bedroom where he made her retrieve approximately $700 for him. They returned to the children's room and Appellant began to undress Grayson.

The neighbors were able to hear struggling and yelling through the walls of the duplex which comprised 858 and 860 Miller Avenue, and they eventually became alarmed and called the police. In response to a possible home invasion call, City of Clairton [P]olice [O]fficers James Kuzak, Matthew McDanel, and Jonathon Steiner arrived on scene in separate vehicles and proceeded to the residence. The three officers surrounded the home. Officer Kuzak approached the rear door and knocked loudly, prompting Appellant to bring Grayson downstairs to the kitchen door. Officer Kuzak announced "this is Clairton police open up." Appellant told Grayson to tell the officer that everything was okay and to go away, and she did so. Officer Kuzak responded, "This is Clairton police. If you don't open up, we're coming in." Grayson again told Officer Kuzak that she was fine, as instructed by Appellant, but the officer continued to knock and attempt to gain entry. Appellant's accomplice came up to the kitchen from the basement and told Appellant that they were going to have to shoot their way out, but Appellant wanted to wait it out. Appellant then left Grayson and his accomplice in the kitchen and briefly went into the living room.

Appellant's accomplice placed his hand on the door handle, counted to three, and then opened the door and shot Officer Kuzak four to six times before jumping over Officer Kuzak's fallen body and running away. Appellant followed and both fled toward an alley behind the house. Officers Steiner and McDanel both began to pursue Appellant and his accomplice, but Officer McDanel stopped in the backyard when he heard Officer Kuzak faintly state that he was injured. Officer McDanel approached Officer Kuzak and placed an "officer down" call for assistance. Officer Steiner was unable to catch Appellant or his accomplice in the alley, and returned to the scene. Officer Kuzak was unable to move and was having difficulty breathing. Officer McDanel carried Officer Kuzak to the front of the house to await the medics while Officer Steiner provided cover.

Officer Kuzak was transported to Mercy Hospital where he underwent several emergency surgeries that were ultimately successful in saving his life. However, Officer Kuzak was shot several times by Appellant's accomplice: (1) one bullet struck him in the hand which disarmed him; (2) two bullets struck him in the center of his bulletproof vest; and, (3) one bullet struck him in the upper chest above the bulletproof vest. The bullet that entered

Officer Kuzak's upper chest broke his spinal cord, causing permanent paralysis.

Following witness interviews and information received through a wire worn by a confidential informant, Appellant was interviewed by police. Appellant gave a statement acknowledging his involvement in the home invasion, but placed primary blame on his accomplice.

Trial Court Opinion (TCO), 6/12/14, at 6-10 (citations to the record and footnote omitted).

Appellant was tried jointly with a codefendant, Marcus Andrejco, who was acquitted of all charges. N.T., 8/16/12, at 2-3. On November 15, 2012, Appellant was sentenced to an aggregate term of 50 to 100 years' incarceration. TCO at 3-5. Appellant's timely post-sentence motion was denied. Post-Sentence Motions, 11/26/12; Order, 2/19/13. He filed a timely notice of appeal. Notice of Appeal, 3/21/13. This Court affirmed his conviction after appellate counsel filed a motion to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), *Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981), and *Commonwealth v. Santiago*, 978 A.2d 348 (Pa. 2009). *Commonwealth v. Rivera*, 509 WDA 2013 (unpub. memo. at 1-2) (Pa. Super. 2015).[4] Appellant did not file for *allocatur*.

---

[4] This Court found that Appellant's sufficiency and weight challenges were waived, as the attorney who filed the *Anders* brief with the Court did not frame them with enough specificity in Appellant's Statement per Pa.R.A.P. 1925(b). *See* Rivera, 509 WDA 2013, at 10. That attorney also failed to include a statement per Pa.R.A.P. 2119(f), thus waiving Appellant's claim that his sentence was excessive as well. *See id.* at 14. Thus, no issues were preserved in his initial direct appeal. *See id.*

On February 18, 2016, Appellant filed an initial, timely petition pursuant to the PCRA. After the trial judge recused himself, Appellant's ability to file post-sentence motions and to pursue direct appellate review were reinstated *nunc pro tunc* on June 12, 2018.[5] Order, 6/12/18. On June 22nd, Appellant filed post-sentence motions. On October 3, 2018, the Commonwealth filed to disqualify Appellant's counsel due to a conflict of interest; the Commonwealth's motion was granted and on November 15, 2018, the post-sentence motions were denied.[6] Appellant filed a timely notice of appeal and made timely compliance with the trial court's order per Pa.R.A.P. 1925(b).

_____

[5] The Commonwealth did not oppose *nunc pro tunc* reinstatement of Appellant's ability to pursue an appeal. Commonwealth's Brief at 10. The order does not specify that Appellant's ability to file post-sentence motions was also reinstated; however, all parties proceeded as if it was, and thus this Court assumes it was merely an oversight.

[6] Under Pa.R.Crim.P. 720, post-sentence motions are generally deemed denied by operation of law after 120 days where the trial court has not denied them prior. ***See*** Pa.R.Crim.P. 720(B)(3)(a). This would mean that Appellant's post-sentence motions would have been denied on Monday, October 22nd, 2018. However, in a hearing on October 9th, Appellant requested a ten-day extension, which the trial court granted. We construe this grant of extension as having been made under Pa.R.Crim.P. 720(B)(3)(b), which allows a trial court to extend the decision period by thirty days (but does not offer any other option, either shorter or longer than 30 days). The request was by Appellant's motion, and either the defense's reasons presented or the prospect of the appointed defense attorney's disqualification both could reasonably have constituted good cause. Thus, the criteria listed at Rule 720(B)(3)(b) that the motion to extend time be made by the defense and granted where good cause is shown, are satisfied. Therefore, the period for filing a notice of appeal was extended thereby and the notice of appeal, filed on November 20th, was timely filed, even though the trial court technically should have filed an order deciding Appellant's post-sentence motions by November 8th, 30 days after the extension was granted. We note that this accords with Attorney

A.    ***Brady*** Claim

Appellant argues that the Commonwealth violated his rights as protected by ***Brady*** and its progeny by failing to provide discovery indicating the total benefits provided to key witness Sean Ball, and that among the undisclosed benefits is that Detective Sherwood promised favorable treatment to Ball, who claimed at trial he had not been promised leniency in exchange for his testimony.   Appellant's Brief at 27-33.   In support of his claim, Appellant alleges that Ball received leniency in charges he faced, which exposed him to five to ten years of potential incarceration, and that Ball received $7,424 as part of a witness relocation program.  ***Id.*** at 28.  Appellant asserts that the Commonwealth suppressed evidence that it had agreed to drop charges against Ball in exchange for his testimony.  ***Id.*** at 31.  Appellant asserts that Ball's testimony was central to the Commonwealth's case, and without Ball's testimony, arguably no direct evidence tied Appellant to the charged crimes.  ***Id.*** at 32.

---

Santoriella's understanding as presented to the trial court.   ***See*** N.T., 10/29/18, at 13.   We also note that the trial court's order denying post-sentence motions informed Appellant that he had 30 days to file an appeal, and thus even if we did not apply Rule 720(B)(3)(b), this would constitute a breakdown in court operations and we would exercise jurisdiction nonetheless; ***see, e.g.,  Commonwealth v. Rodriguez***, 174 A.3d 1130, 1138-39 (Pa. Super. 2017), ***appeal denied***, 186 A.3d 941 (Pa. 2018) (where facially untimely appeal was tardy due to error of trial court's clerk of courts, this Court declines to quash).

The Commonwealth claims that Appellant's ***Brady*** claim is waived for failure to establish it by record evidence, and that he has not carried his burden of establishing by a preponderance of the evidence his eligibility for relief (for the same reason). Commonwealth's Brief at 20. The Commonwealth's Brief does not address whether Appellant's accusation has any ***a posteriori*** grounding. ***Brady*** requires that prosecutors "disclose all favorable evidence that is material to the guilt or punishment of an accused, even in the absence of a specific request by the accused." ***Commonwealth v. Bagnall***, 235 A.3d 1075, 1085 (Pa. 2020).

To establish a ***Brady*** violation, a defendant must prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, as prejudice must have ensued from the failure to disclose. ***Commonwealth v. Burke***, 781 A.2d 1136, 1141 (Pa. 2001). When the reliability of a witness' testimony may be determinative of the jury's verdict, nondisclosure of evidence affecting credibility is incompatible with the "rudimentary demands of justice" and can constitute a ***Brady*** violation. ***Giglio v. United States***, 405 U.S. 150, 154 (1972), *quoting* ***Mooney v. Holohan***, 294 U.S. 103, 112 (1935). Whether a potential ***Brady*** violation should trigger a new trial is a question of law, for which our standard of review is *de novo* and our scope of review is plenary. ***Bagnall***, 235 A.3d at 1084.

The trial court says that this is a bald allegation with no evidentiary support and that the record indicates that Appellant knew, prior to trial, that Ball would receive consideration for his testimony. Trial Ct. Op., 2/12/20, at 7-8. The notes of testimony from May 18 through 22, 2012, addressing pretrial motions, reflect that defense counsel was informed by representatives of the Commonwealth that a detective "may have provided consideration to [Ball]" in the time period around Ball's arrest. N.T. 5/18-22/12 at 79-80. Defense counsel stated that when asked about it, Ball reported that Detective Glick did, at some point, aid Ball. *Id.* at 80. The trial court summarized its *in camera* review of Ball's relationship with the Commonwealth, and asserted that (without disclosing other persons involved in other cases), it disclosed in its summary every incident of cooperation and potential consideration the court reviewed. *Id.* at 81-83.

Ultimately, the trial court concludes, correctly, that without hard evidence, we may not reach the conclusion that the Commonwealth suppressed evidence. We are not a fact-finding, but an appellate, court. Thus, this claim fails.

B.    Wiretap Claim

Appellant argues that the trial court improperly admitted evidence derived from the allegedly illegal wiretap of Sean Ball, and that the Commonwealth failed to obtain the required authorization given that part of the intercepted communications occurred inside Appellant's residence,

triggering the requirements of 18 Pa.C.S. § 5704(2)(4) and (b). He asserts that the agents involved with the electronic surveillance were not the authorized agents to do so and non-authorized individuals were involved in some of the interceptions, including agents from the ATF, DEA, and Pennsylvania's OAG.[7] Appellant's Brief at 33-41.

The Commonwealth claims that this issue is waived as there was no timely objection on these grounds, and that Appellant did not carry the burden of establishing his eligibility for relief. Commonwealth's Brief at 26.

Appellant relies on the language of 18 Pa.C.S. § 5709, which states that applications for an order authorizing a wire interception shall be accompanied with, *inter alia*, "a statement of the identity and qualifications of the investigative or law enforcement officers or agency for whom the authority to intercept a wire, electronic or oral communication is sought." Appellant's Brief at 36-37, *quoting* 18 Pa.C.S. § 5709(2).

This Court cannot perceive that this claim of error was squarely presented below, and therefore no relief may lie. The trial court opinion analyzes only the general propriety of the warrant. **See** TCO, 6/12/14, at 8-10. Though Appellant's statement per Pa.R.A.P. 1925(b) includes this

---

[7] That is, the two federal entities the Bureau of Alcohol, Tobacco, Firearms and Explosives; and the Drug Enforcement Administration; as well as Pennsylvania's Office of the Attorney General.

complaint,[8] it is far from plain that it was raised prior to the filing of that statement. Thus, this Court may not proceed, as the ground has not first been charted by the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). This claim is waived.

## C. Sufficiency: Burglary

Appellant argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was guilty of burglary, given that the evidence failed to prove beyond a reasonable doubt that he entered a building or occupied structure with the intent to commit a crime therein. Essentially, he argues that the two men who conducted the home invasion were let in, voluntarily, where "Mr. Mullen opened the door for the two men[, o]ne man purportedly said, 'Where's the shit' and Mr. Mullen responded that it was in the basement." Appellant's Brief at 42.

The Commonwealth points to law establishing that consent obtained by force or deception cannot be considered true consent. Commonwealth's Brief at 34-36. The trial court similarly cites evidence establishing that the two men who committed the home invasion said "This is the FBI. Open up." TCO, 6/12/14, at 12.

We apply our well-settled standard of review:

---

[8] *See* Rule 1925(b) Statement, 4/29/19, at 2-3 (unpaginated).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Frisbie*, 889 A.2d 1271, 1274–75 (Pa. Super. 2005) (citations and quotations omitted).

A person is guilty of burglary if they enter a building or occupied structure with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. *See* 18 Pa.C.S. § 3502(a) and (b). License or privilege to enter a premises acquired by deception cannot support a defense to burglary. *Commonwealth v. Edwards*, 903 A.2d 1139, 1144, 1148 (Pa. 2006) (evidence sufficient for burglary where defendant gained entry by falsely claiming to deliver money to satisfy a debt). Further, evidence that a defendant forced their way into a residence supports a burglary verdict and negates the defense of license or privilege. *See, e.g., Commonwealth v.*

***Hopkins***, 747 A.2d 910, 912, 917 (Pa. Super. 2000) (evidence sufficient for burglary where defendant, in ski mask, beat resident who answered door and forced his way into residence brandishing gun).

We agree that there is ample evidence from which the factfinder could conclude that Appellant was not properly admitted into the residence by the property owner. Appellant's dispute is with the facts as recognized by the jury. This argument fails.

D.    Sufficiency: Robbery

Appellant argues that robbery was not established with sufficient evidence as the Commonwealth did not establish that the conduct occurred in the course of committing a theft. Appellant's Brief at 43-46. Substantially, Appellant argues that the evidence instead showed that the intruders were attempting to reclaim their own property, "an aim which Mr. Mullen apparently and immediately understood as he appeared to know . . . that they were referring to drugs or money, presumably which he owed to them.". ***Id.*** at 44. For purposes of 18 Pa.C.S. § 3701 (defining robbery), "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." ***See*** 18 Pa.C.S. § 3921(a).

The Commonwealth argues that its evidence established that the money and drugs that were demanded by the intruders belonged to the homeowner. Commonwealth's Brief at 39-40. The Commonwealth correctly points to

- 15 -

evidence that one of the residents was a drug dealer, and that therefore the money and drugs were stolen rather than "recovered" by the intruders.

The trier of fact is free to believe all, part or none of the evidence adduced at trial. *Frisbie*, 889 A.2d at 1274–75. Again, Appellant's dispute goes to the facts, and that is not this Court's domain. Certainly, feigning to be law enforcement and using guns to gain entry cannot be compatible with this argument, any more than it could be compatible with a version of events in which the home invaders were invited in. The jury's verdict finds ample support in the record. This claim is meritless.

E, F, and G. Sufficiency: Robbery/REAP/Unlawful Restraint with SBI

Appellant argues that insufficient evidence showed that he inflicted SBI upon another or threatened another with or intentionally put another in fear of immediate SBI. If true, this would invalidate his four convictions of robbery under 18 Pa.C.S. § 3701(a)(1)(i) or (ii) and his four REAP convictions under 18 Pa.C.S. § 2705, as each necessitates that the Commonwealth establish beyond a reasonable doubt that the accused engaged in conduct that places or may place another in danger of death or SBI (REAP) or threatened another or intentionally put another in fear of immediate SBI (robbery). *See* 18 Pa.C.S. § 3701(a)(1)(i) and (ii), 18 Pa.C.S. § 2705. Appellant argues that because he was acquitted by the jury of attempted homicide, aggravated assault, attempted rape, and conspiracy to commit rape, the jury must not have believed that he was the assailant who carried a gun. Appellant's Brief

at 48-49. Further, he argues that because the Commonwealth did not establish that he exposed the victims to risk of SBI, he cannot have been guilty of unlawful restraint.[9] *Id.* at 53-56.

The Commonwealth replies that "The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of 'serious bodily injury' . . . . A factfinder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm." Commonwealth's Brief at 44, *quoting* **Commonwealth v. Ouch**, 199 A.3d 918, 924 (Pa. Super. 2018) (citations omitted). The Commonwealth points out that under Pennsylvania law, a defendant "is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." Commonwealth's Brief at 45 (emphasis omitted), *quoting* 18 Pa.C.S. § 306(a).

The trial court emphasizes Appellant's use of a firearm, and the fact that the coconspirators pointed the gun repeatedly at the home's residents, including a young child, and struck one victim in the head with that gun. Trial Ct. Op., 2/12/20, at 14.

Initially, while Appellant wishes this Court to infer that the jury must have concluded that he was not the gunman, his codefendant was acquitted

---

[9] Unlawful restraint consists of restraining another unlawfully in circumstances exposing that person to risk of SBI or holds another in involuntary servitude. **See** 18 Pa.C.S. § 2902(a)(1) and (2).

by the jury, so if this Court was to attempt to read the jury's tea leaves, it would be hard to conclude that the defendant that the jury **convicted** of robbery and REAP was **actually considered not guilty** of those crimes by the same jury. However, we need not speculate. Our Supreme Court's jurisprudence "overwhelmingly permit[s] inconsistent verdicts in a variety of contexts." *Commonwealth v. Moore*, 103 A.3d 1240, 1246 (Pa. 2014). "[J]uries may issue inconsistent verdicts and [ ] reviewing courts may not draw factual inferences in relation to the evidence from a jury's decision to acquit a defendant of a certain offense." *Id.* at 1249.

Serious bodily injury consists of "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The evidence adduced at trial establishes that the gunman shoved a handgun into one of the victims' mouths, an act that this Court has held to be sufficient to establish the intent to inflict SBI. *See Commonwealth v. Matthews*, 870 A.2d 924, 933 (Pa. Super. 2005) (*en banc*) ("The act of placing a loaded firearm against the victim's throat and continuing to point the loaded firearm at him . . . constituted a substantial step toward the infliction of serious bodily injury."). Because the evidence more than surmounts what the law requires, and because Appellant erroneously invites this Court to draw inferences from the jury's split verdict, this argument fails.

Appellant also argues that the Commonwealth did not establish with sufficient evidence that the firearm was operable, as is necessary to fulfill the requirements of unlawful restraint, 18 Pa.C.S. § 2902(a)(1). Appellant's Brief at 54-56 (*citing* **Commonwealth v. Schilling**, 431 A.2d 1088 (Pa. Super. 1981)). In **Schilling**, this Court held that a pellet gun that is potentially unloaded cannot support a conviction for unlawful restraint that exposes the victim to the risk of serious bodily injury. **Schilling**, 431 A.2d at 1092.

More to the point, the Commonwealth correctly points out that even if Appellant was not the shooter, accomplice liability would establish his culpability for the acts of his partner. Commonwealth's Brief at 53-55. One of the home invaders shot a police officer during this incident, a fact that significantly, indeed utterly, undermines Appellant's argument. In **Schilling**, this Court reversed because the Commonwealth did not establish exposure to an actual danger of serious bodily injury. **Schilling**, 431 A.2d at 1092. Here, the seriousness of the shooting cannot reasonably be contested, its implications for the gun threats made immediately beforehand are plain, and thus this argument is unavailing.

H.     Weight of the Evidence

Appellant argues that his convictions are against the greater weight of the evidence, as the evidence against him was circumstantial, one of the

victims' identification of him was unreliable, and the evidence related to Sean Ball was unreliable.[10]  Appellant's Brief at 56-68.

The Commonwealth replies that our standard of review must be deferential, and that the trial court was in a much better position to gauge the evidence than any court relying on a cold record can be.  Commonwealth's Brief at 56-60.  The Commonwealth also reports that, although the trial court found Appellant's weight claim at an earlier point in this litigation to be waived, he also wrote that "[e]ven if [this Court] was to address Appellant's claim, it is clear that the verdict was not against the weight of the evidence, and Appellant's claim is without merit." *Id.* at 61 (emphasis omitted).

The trial court also points out several factors that weigh against Appellant's attack: the jury's careful verdict, which was neither a total acquittal nor a total conviction, reflects its serious deliberation and desire to reach the right conclusion.  Trial Ct. Op., 2/12/20, at 17.  Indeed, although elsewhere Appellant challenges admission of his own statements against him, once they were presented, the jury was entitled to take those statements seriously. *Id.* at 18.

"A weight of the evidence challenge is addressed to the discretion of the trial court, and appellate review of a weight claim is a review of the exercise of discretion of the trial court in denying the claim, and not a review of the

_____

[10] Appellant preserved the issue in his Post-Sentence Motion, 6/22/18, at 6, 11 (unpaginated).

underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Wright***, 865 A.2d 894, 915 (Pa. Super. 2004) (citation omitted). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (citation omitted). Arguments based on weight of the evidence are among "the least assailable reasons for granting or denying a new trial" because of our deference to the trial judge, who witnessed the factual presentation. ***Id.***

Appellant focuses heavily on the lack of physical, "CSI-style" evidence such as DNA, and on problems with witness identification, an argument that necessarily occludes his incriminating statements (which we discuss in more detail below). Assuming (as we must, at this point) that these statements were properly admitted, their weight was for the jury to determine, and we must defer to the trial court's conclusion, made after a thorough review of the record, that "the trial evidence was not so unreliable and/or contradictory that the verdict in this case was speculative." Trial Ct. Op., 2/12/20, at 18. This claim fails.

I.   Admission of Appellant's Statements

Appellant argues that the trial court erred in admitting certain incriminating statements he made while in custody and after he had requested

to speak with a lawyer. Appellant's Brief at 68-75. Those statements included a thorough, accurate, and extremely revealing account of the home invasion, an account that echoed what police had learned from the victims to a degree that would be difficult to explain if Appellant had not been, at a minimum, present during the event. *See* Commonwealth's Brief at 65-70 (recounting statement particulars, including twenty-two facts corroborated by other evidence including witness and victim statements).

The Commonwealth argues that this claim is both waived and meritless. Commonwealth's Brief at 72-75. The Commonwealth points out that Appellant's brief fails to make reference to any point in the record where Appellant made any offer of proof regarding his alleged request for an attorney. *Id.* at 74.

Regardless of whether it is adequately preserved, we agree that Appellant's argument cannot support relief. This Court's scope of review is limited to the factual findings and legal conclusions of the suppression court. *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010) (citation omitted). We consider only evidence from the victor along with an appellant's uncontroverted evidence. *Id.*

The trial court made findings and conclusions on March 30, 2012 in which it found that Appellant's **Miranda**[11] waiver was properly executed and that his statement to police was constitutionally obtained and therefore admissible. N.T. Findings and Conclusions, 3/30/12, at 20-26. The trial judge noted that he listened to the audio recording of Appellant's confession, and was attentive to what it reflected of Appellant's demeanor at the time the recording was made. *Id.* at 26. Without more than a bald assertion of a different chain of events, this Court may not upset the trial court's findings. Based on its findings that Appellant consented and cooperated willingly, we can reach no different legal conclusion than that of the trial court. Thus, this claim fails.

J.      Admission of Appellant's Prior Convictions

Appellant argues that the trial court erred in allowing admission, through a Commonwealth witness, of Appellant's two prior convictions of carrying a firearm while unlicensed. Appellant's Brief at 76-78. Appellant accurately reports that the judge gave a curative instruction, but asserts that nevertheless, Pa.R.E. 404(b) forbids this prior bad acts evidence. *Id.* at 76-77.

The Commonwealth responds that Pa.R.E. 405(a)(2) permits evidence of prior convictions when relevant to character testimony. Commonwealth's

---

[11] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Brief at 77. Further, the Commonwealth points out that jurors are presumed to follow the trial court's instructions. *Id.* at 84. Because the court gave a proper curative instruction instantly, any harmful impact was appropriately ameliorated. *Id.*

The trial court also points out that while Pa.R.E. 404(b) evidence is not admissible to prove that a defendant acted in conformity therewith, it is admissible for other purposes, as it was here. Trial Ct. Op., 2/12/20, at 22. The trial court cites the fact that during examination by Appellant's attorney, Appellant's girlfriend, Brandy Balogh, testified, "Yeah, . . . I know there was no guns in the house because we have a baby on the way, and [Appellant] doesn't – he has no involvement with them type of things. He's not a violent person at all." *Id.* at 23. Because the witness strayed into the realm of Appellant's character, the trial court permitted rebuttal. *Id.*

While it is accurate that Balogh was a Commonwealth witness, she was also apparently Appellant's girlfriend **at the time of trial**. Trial Ct. Op., 2/12/20, at 23. The trial court reports that she was "less than cooperative" with the Commonwealth during her testimony. *Id.* The day after this testimony was delivered, Appellant's **codefendant**, through counsel, cross-examined Balogh as to this assertion. N.T. Trial, 8/8/12, at 32-33. Counsel asked Balogh if she was aware that Appellant had acquired two convictions for carrying a firearm without a license. *Id.* at 32. The trial court gave a prompt instruction that the evidence was before the jury for a limited purpose, to

reflect the basis of the witness' testimony or opinions, and that the jury must not infer bad character or a propensity toward crime based thereon. *Id.* at 32-33. Appellant recorded no objection to this instruction. *See id.* at 33.

This Court agrees that the claim is meritless, as juries must be presumed to follow the instructions of the court. *See, e.g., Commonwealth v. Smith*, 995 A.2d 1143, 1163 (Pa. 2010) ("The jury is presumed to follow the trial court's instructions") (citation omitted).

K.      Admission of "Back to Jail" Comment

Appellant gave a taped statement to police in which he said he committed the home invasion with a man named Marc, who was the gunman. In his statement, Appellant said that when he and Marc realized the house was surrounded by police, Marc said, "I ain't going back to jail" and Appellant replied, "I'm not trying to go back to jail neither." Commonwealth's Exh. 149 at 2.[12] In his testimony, Commonwealth witness Sean Ball recounted that Appellant had told him that during the home invasion, in response to the prospect of police outside the house, Appellant had said he wasn't going back to jail. N.T. Trial, 8/2/12, at 273.[13]

---

[12] The transcript of Appellant's interview with police appears in the August 6, 2012, trial transcript, between pages 142 and 143, and was marked as Commonwealth's Exh. 149.

[13] "Q. Tell us as best you can recall what he said happened then, sir?" A. That he was inside going through the house. That he heard a boom at the door. He looked at his bro and told his bro that he wasn't going back to jail. The only way out of this was to shoot their way out of it." N.T. 8/2/12, at 273.

Appellant argues that the trial court erred in permitting admission of a conversation captured *via* wiretap between Appellant and Sean Ball, in which Appellant expressed his determination not to become incarcerated again, thus revealing to the jury that he had been jailed before. Appellant's Brief at 78-79. Appellant argues that the trial court's curative instruction against a propensity assumption was ineffective and could not serve to dissuade the jury from concluding that Appellant "had been and continued to be a criminal." *Id.* at 79.

The Commonwealth cites Rule 404(b), which allows admission of prior bad acts for purposes other than establishing propensity. Commonwealth's Brief at 85-88. The Commonwealth notes that the trial court gave an appropriate limiting instruction. *Id.* at 87-88. The Commonwealth argues that the probative value of the statement outweighs its prejudicial effect, as it tends to establish consciousness of guilt. *Id.* at 87. Likewise, the trial court concludes that the evidence was properly admitted and the court's limiting instruction adequately defused any potential undue prejudice. Trial Ct. Op. At 25.

As discussed *supra*, juries are presumed to follow the trial court's instruction. For the same reasons Appellant's complaint as to Balogh's testimony and rebuttal as to his prior convictions fails, this claim fails.

---

We note that there was no objection; the defense objected shortly thereafter to the use of leading questions and the objection was sustained. ***See id.***

L.    Severance

Appellant argues that his case should have been tried separately from that of Andrejco, because Andrejco's defense was overly prejudicial to Appellant.  Appellant asserts that because Andrejco was the shooter and Andrejco's actions were far more serious, the jury was incapable of separating that evidence when considering Appellant's guilt.  Appellant's Brief at 80-82.

The Commonwealth counters by arguing that Appellant's argument on severance is not preserved for appeal because it was not raised before the trial court, and even if it were, the trial court correctly concluded that it is not meritorious.  Commonwealth's Brief at 89-94.  The trial court recounts that when arguing his severance motion, Appellant's counsel emphasized that it was the wiretap statements that would make a joint trial impossible for Appellant.  "The trial court record reflects that, other than evidence of [Appellant's] prior firearms convictions . . . only portions of that statement relating to the offenses of conviction were admitted at trial."  Trial Ct. Op., 2/12/20, at 26.  Because Appellant's counsel acknowledged that the portions admitted were admissible and the challenged statements were ultimately not admitted, denial of severance was proper.  *Id.*

Appellant argues that "Andrejco's conduct at the crime scene was significantly more egregious, as it was he who was identified as the shooter . . . [T]he jury was incapable of separating the evidence and could not avoid cumulating the evidence."  Appellant's Brief at 81.  Appellant's argument is

curious, inasmuch as it appears the jury was very willing to distinguish between the Commonwealth's case against Andrejco, who was acquitted, and its case against Appellant.

"The decision to sever offenses is within the sound discretion of the trial court and will be reversed only for a manifest abuse of that discretion." *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997) (citation omitted). "The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice." *Commonwealth v. Dozzo*, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted). Under Pa.R.Crim.P. 582, joint trial is permitted where codefendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). "Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime."[14] *Dozzo*, 991 A.2d at 902.

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger

---

[14] "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Collins*, 703 A.2d at 422 (quoting *Commonwealth v. Lark*, 543 A.2d 491, 496–97 (Pa. 1988) for what has become known as "the *Lark* test").

Appellant's claim is predicated on the idea that the jury would have formed "an unfavorable impression in their minds as to Appellant's character . . . based solely on the weightier evidence implicating [Andrejco]." Appellant's Brief at 82. Without reference to the record to support this argument, however, this Court cannot so conclude. As the record does not support it, this claim is properly denied.

M.    Cross-Examination of Sean Ball

Here, Appellant again argues that he was deprived of *Brady* evidence relating to Sean Ball and benefits he may have received in exchange for his cooperation in securing Appellant's conviction. Appellant's Brief at 82-83. "The defense could not waive an issue that only became evident post-trial." *Id.* at 83.

The Commonwealth argues that this claim is waived as improperly developed, both before the trial court and on appeal. Commonwealth's Brief at 94-95. The trial court similarly concludes that this issue is not properly developed for appellate review, citing Pa.R.A.P. 302(a). Trial Ct. Op., 2/12/20, at 26.

It may be that this issue will bear exploration in post-conviction proceedings, but what is certainly true is that the issue is not properly before us, for the reasons the trial court cites. The analysis at A, **supra**, applies with equal force here, and thus we will not embark on a Confrontation Clause analysis that is thwarted at the outset. This claim fails.

N.      Detective Langan's Testimony: Confrontation

Appellant argues that his right to confront his accusers under our state and federal constitutions was violated by admission of Detective Langan's testimony from his suppression hearing after Langan was declared unavailable at trial due to illness. Appellant's Brief at 83-89.

The Commonwealth responds that the issue is not preserved for appellate review, and that it lacks merit, as Detective Langan's testimony was relevant only against Andrejco. Commonwealth's Brief at 95-96. Similarly, the trial court concludes that because the testimony was admitted only against Andrejco and because Appellant's counsel did not object, the claim is both meritless and waived. Trial Ct. Op., 2/12/20, at 26-27, *citing* Pa.R.A.P. 302(a).

Our independent review of the record reveals that trial counsel for Appellant did not object, though counsel for Andrejco did lodge an objection.

*See* N.T., 8/9/12, at 147-155.[15]  That being the case, the issue is waived and we may not grant relief thereon.  *See* Pa.R.A.P. 302(a).

O.    Illegal Sentence

Appellant asserts that his sentence was illegally enhanced by erroneous application of 42 Pa.C.S. § 9714, as both violent crimes (robbery and burglary) arose from a single criminal episode.[16]  Appellant's Brief at 89-94.  The trial court imposed ten-year sentences to five of the instant convictions, applying Section 9714, the second strike law, and Appellant argues that only one of those convictions should have triggered application of that law.  *Id.*

The Commonwealth contends that, contrary to Appellant's argument, application of the second strike law was mandatory.  Commonwealth's Brief at 104-108.  The Commonwealth also cites *Commonwealth v. Fields*, 107 A.3d 738 (Pa. 2014),[17] a case that was handed down after Appellant's trial but that clarifies rather than announcing a new rule; *Fields* holds that the second strike law "requires that a second-strike offender be sentenced to the

_____

[15] Counsel for Appellant did inquire as to whether he could lodge an objection to the testimony as it was being read, and the trial court answered in the affirmative, while expressing the wish that counsel could have prepared such that any potential dispute could have been handled beforehand.  N.T., 8/9/12, at 152.

[16] 42 Pa.C.S. § 9714(a) mandates imposition of a minimum ten-year sentence for subsequent convictions of crimes of violence.

[17] Commonwealth's Brief at 105.

prescribed minimum term of incarceration for each conviction of a crime of violence that is part of the second strike." *See Fields*, 107 A.3d at 744. The trial court concluded that the sentence imposed was consistent with *Fields* and in no way improper. Trial Ct. Op., 2/12/20, at 29-30.

Appellant also cites *Fields*, which is appropriate and ethical, but disagrees with the holding in that case. Thus Appellant has preserved the argument if he pursues further review of it, but this Court is obviously not empowered to part way with *Fields*. Appellant also argues that *Fields* should not apply, as it was handed down on December 31, 2014, after his sentencing hearing of November 15, 2012. Our review of *Fields* cannot support this argument. In *Fields*, our Supreme Court applied the rules of statutory construction to arrive at the proper application of the statute's plain language. *See Fields*, 107 A.3d at 743. The language of Section 9714 analyzed in *Fields* was fully in force at the time Appellant committed the underlying crime here.[18] *Fields* applies the plain language of the statute; it does not change that statute's language or meaning. This claim fails. *See also Kline v. Travelers Personal Security Insurance Company*, 223 A.3d 677, 689 (Pa. Super. 2019) ("The general rule in Pennsylvania is that appellate courts apply the law in effect at the time of appellate review.").

---

[18] The version of Section 9714 analyzed in *Fields* was effective from February 20, 2001 to September 5, 2011. *See* 42 Pa.C.S. § 9714 (as amended December 20, 2000). It has since been amended.

P.     Removal of Attorney Santoriella

Attorney Rachael Santoriella was initially appointed to represent Appellant on the present appeal.  However, because Attorney Santoriella had previously been appointed to represent Sean Ball in another matter, the trial court removed her.[19]  Appellant's Brief at 95.  Appellant asserts that he waived any potential conflict and Attorney Santoriella was conferring with Ball through his lawyer as to whether Ball would waive any potential conflict as well, when Santoriella was disqualified.  *Id.* at 95-96.  Thus, the gravamen of Appellant's complaint is that disqualification was premature.   He asserts his Sixth Amendment right to counsel.  *Id.* at 97.

The Commonwealth responds that indigent criminal defendants have a right to counsel, but not to counsel of their choosing.  Commonwealth's Brief at 98.  "Clearly, the right to appointed counsel does not include the right to counsel of the defendant's choice."  ***Commonwealth v. Albrecht***, 720 A.2d

---

[19] Attorney Santoriella was appointed to an unrelated case in which Ball was seeking time credit; she filed a letter of no merit and motion to withdraw in that case.  ***See*** N.T., 10/9/18, at 17.  The motion to withdraw was granted on 6/27/18.  ***See id.*** at 19.  Santoriella's allegation that Ball had given false testimony about potential benefits provided in exchange for his testimony was related to the prosecution of former homicide detective Margaret Anne Sherwood.  On August 2, 2019, Sherwood entered a *nolo contendere* plea to two counts of hindering apprehension or prosecution, 18 Pa.C.S. § 5105(a)(5) (providing false information) at CP-02-CR00002229-2018.  Sherwood had been accused of, among other acts, improperly seeking favorable treatment for Ball.  We note that the trial court credited Attorney Santoriella for acting in good faith, although it ultimately rejected her argument.  ***See*** N.T., 10/29/18, at 17.

693, 709 (Pa. 1998). The Commonwealth cites **Albrecht** for this proposition. There is, however, a relevant distinction between the scenario in **Albrecht** – in which a defendant felt his appointed counsel lacked sufficient capital experience to render effective service – and the present scenario, where a lawyer was appointed and had begun representing Appellant prior to removal by the presiding judge. **See id.** at 709.

Although Sean Ball testified that he had not received promises of preferential treatment for his cooperation in this case (in which he was not a coconspirator), Attorney Santoriella asserted that Ball received such a promise from a detective who was involved in a domestic violence prosecution against Ball. Trial Ct. Op., 2/12/20, at 27. Attorney Santoriella had been appointed to represent Ball in proceedings in which he sought time credit for a conviction. **Id.** The trial court cited Rules of Professional Conduct 1.9(a) and 1.7 in support of the decision to remove Attorney Santoriella from Appellant's case. **Id.** at 28. The trial court reports that Attorney Santoriella had announced her intention to cross-examine Ball at a post-sentencing hearing to establish that he had committed perjury at trial. **Id.** at 27.

Rule 1.9(a) requires that lawyers refrain from representations "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of [a] former client unless the former client gives informed consent." Pa.R.P.C. 1.9(a). Rule 1.7 governs conflicts involving current clients, and forbids concurrent conflicts of interest. Pa.R.P.C.

1.7(a). It also outlines four circumstances that must be present for a lawyer to engage in a representation that may present a concurrent conflict: the lawyer's reasonable belief that they can represent each client with competence and diligence; legality of the representation; absence of claims by one client against another; and informed consent from each client. Pa.R.P.C. 1.7(b)(1)-(4).

We agree with the trial court that Attorney Santoriella was in an untenable position. Although her announced intention to attack Ball on the stand was consistent with Appellant's strategy, it was not consistent with her ongoing duty of fealty to Ball. "Attorney Santoriell[a] provided no evidence of record that Ball waived the conflict of interest." Trial Ct. Op., 2/12/20, at 29, and as Appellant acknowledges on appeal, Ball had not given any such waiver. *See* Appellant's Brief at 95-96. This presented an irreconcilable conflict of interest, and thus we cannot conclude that the trial court abused its discretion. This claim fails.

Q.    Recusal

Appellant contends that Paul Gettleman, Esq., Appellant's trial counsel, and the trial judge were involved in a physical altercation at an event, and that the friction between Attorney Gettleman and the trial judge was "personal and tangible and demonstrable." Appellant's Brief at 100-01. Appellant asserts that the trial judge behaved unreasonably in failing to recuse himself when such recusal was requested. *Id.* at 101.

The Commonwealth asserts that the claim is waived for failure to cite the record and general underdevelopment. Commonwealth's Brief at 96-97. Likewise, the trial court asserts that the claim is waived, as it was not raised or developed in the record. Trial Ct. Op., 2/12/20, at 29.

This is a disturbing allegation, as this Court would hope that, should a jurist have had such an intense encounter with another member of the bar that the encounter led to violence or the threat of violence, that jurist would at a minimum clear the air and offer the parties an opportunity to assess whether they might want to lodge a responsive motion. Allegheny County is gifted, as few other judicial districts are, with an abundance of jurists, such that no matter the type of case, there should always be another option should a serious recusal concern trigger any considerations under our Code of Judicial Conduct[20] or law on recusal.[21]

---

[20] 207 Pa. Code, Chapter 33, and more specifically, Section 15-4, Disqualification and Recusal. That section quotes Comment (3) to Rule 2.7 of the Pennsylvania Code, which states that "[a] judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification or recusal, even if the judge believes there is no proper basis for disqualification or recusal." *See* 207 Pa.Code § 15-4.

[21] The mere **appearance** of bias or of a lack of impartiality on the part of an arbiter, tasked with neutrality, can violate a party's due process rights under Pennsylvania's Constitutional Due Process guarantee. *See Lyness v. Com., State Bd. of Medicine*, 605 A.2d 1204, 1207 (Pa. 1992) ("There is a strong notion under Pennsylvania law that even an **appearance** of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen"); *Copeland v. Twp. of Newtown*, 608 A.2d 601, 602 (Pa. Cmwlth. 1992) ("[T]he potential for bias and that appearance of non-

However, given the underdeveloped nature of this argument, we cannot predicate any grant of relief thereon. Thus, we agree with the trial court and the Commonwealth that this claim is waived.

U. Merger

Appellant argues that his sentences for robbery and burglary "are intertwined to a degree to require a merger of the sentences." Appellant's Brief at 117. Appellant cites **Commonwealth v. Diaz**, 867 A.2d 1285 (Pa. Super. 2005), in which this Court determined that remand for resentencing was appropriate as under the circumstances, theft and burglary merged.

The Commonwealth responds that this Court has held otherwise, citing **Commonwealth v. Dockins**, 326 A.2d 505, 507 (Pa. Super. 1974) ("Robbery however is not a lesser-included offense of Burglary, nor is Burglary a lesser-included offense of Robbery."). Commonwealth's Brief at 109.

This Court may not impose merger where separate sentence is imposed "for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Commonwealth v. Baldwin**, 985 A.2d 830, 837 (Pa. 2009). Here, burglary is the broader statute, and thus if it includes all of

---

objectivity is sufficient to create a fatal defect under the Pennsylvania Constitution.") (citation omitted), *overruled on other grounds*, **Harmon v. Mifflin County Sch. Dist.**, 651 A.2d 681, 686 n.7 (Pa. Cmwlth. 1994) (*en banc*).. Because the record is underdeveloped, any on-the-record exploration of this potential issue must be relegated to post-conviction collateral review.

the elements of robbery, merger would be proper.  One commits robbery by, in the course of committing a theft, they inflict SBI on another or threaten another with or intentionally put another in fear of immediate SBI.  18 Pa.C.S. § 3701(a)(1)(i) and (ii).  One commits burglary when, with the intent to commit a crime therein, that individual enters a building or occupied structure, or separately secured or occupied portions thereof, adapted for overnight accommodation and with a person present, the individual commits, attempts or threatens to commit a bodily injury crime therein.  18 Pa.C.S. § 3502(a)(1)(i).  Burglary does not necessarily include theft, but robbery always does.  Thus, we cannot conclude that these crimes merge for sentencing purposes.  ***See also Commonwealth v. Dockins***, 326 A.2d 505, 507 (Pa. Super. 1974) ("Robbery . . . is not a lesser-included offense of Burglary, nor is Burglary a lesser-included offense of Robbery.").  This claim fails.

R. Through V (Excepting U):  Sentencing Considerations

We analyze these claims of error together, as they all pertain to Appellant's sentencing hearing and the sentence imposed.  We note that on page 102 of Appellant's brief, there appears a statement per Pa.R.A.P. 2119(f), recognizing that review of the discretionary aspects of sentence is not a matter of right but that Appellants must demonstrate that a substantial question exists by advancing a colorable argument that the sentencing court ran afoul of a specific provision of the sentencing code or otherwise violated a fundamental norm at sentencing.  Appellant's Brief at 102.  Appellant argues

that the trial court failed to adhere to requirements imposed at 42 Pa.C.S. §§ 9721 and 9725, raising a substantial question, because that court "gave inadequate consideration to the mandatory sentencing criteria, as set out in" those sections. Appellant's Brief at 102. Appellant also argues that the trial court gave disproportionate weight to the nature and facts of the crime. *Id.* at 105-07. His next argument, though more specific, raises essentially the same concern; he argues that the trial court, in imposing sentence, "gave inappropriate consideration to the harm incurred by Officer Kuzak given that the jury's verdict suggested that it did not believe that Appellant was involved in shooting the officer." *Id.* at 108. Appellant also argues that the trial court erred in imposing sentences for burglary and robbery to run consecutively, as in light of the charges resulting in acquittal, such imposition is disproportionate, and that under the circumstances, the crimes merge. *Id.* at 111-17. Finally, Appellant argues that in the aggregate, the sentence imposed is manifestly excessive. *Id.* at 117-23.

The Commonwealth responds that the trial court appropriately applied the second strike sentencing enhancement at 42 Pa.C.S. § 9714, as the statute and *Fields*, 107 A.3d at 744, require its imposition to each of the listed violent crimes of which Appellant was convicted. Commonwealth's Brief at 104-08. This Court agrees that Appellant's arguments against *Fields* are frivolous and contrary to law. *See* H, *supra*.

Further, the Commonwealth points out that the sentencing court reviewed the presentence report and guidelines, and had become familiar with Appellant over the course of pretrial hearings and a long trial. Commonwealth's Brief at 114. Appellant's sentence reflects the imposition of several mandatory sentences, and because the trial court was bound to apply those sentences, such imposition cannot represent an abuse of discretion. Commonwealth's Brief at 119.

This Court has outlined a four-part analysis for claims sounding in the discretionary aspects of sentence, to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved [the] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [per Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question [as to whether] the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (citation omitted). An appellant raises a "substantial question" when they "set[ ] forth a plausible argument that the sentence violates a provision of the [S]entencing [C]ode or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2010) (citation omitted).

> Sentencing is a matter vested in the sound discretion of the sentencing court, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion, which in this context, is not shown merely to be an error in judgment; rather the appellant

must establish by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shull***, 148 A.3d 820, 831 (Pa. Super. 2016) (citation omitted). "Where a pre-sentence investigation report exists, we presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Guth***, 735 A.2d 709, 712 (Pa. Super. 1999) (citation omitted). To establish that the sentencing court abused its discretion, an appellant "must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Williams***, 69 A.3d 735, 741 (Pa. Super. 2013) (citation omitted). Imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. ***Commonwealth v. Lloyd***, 878 A.2d 867, 873 (Pa. Super. 2005).

Although Appellant has cautiously attempted to unwind the skeins of law and sentencing considerations that led to imposition of the sentence he is serving, several of his arguments amount to an assertion that the trial court was simply too harsh.[22]

---

[22] Appellant does not help his cause in arguing that his sentence "is disproportionately high compared to other sentences given to accused individuals convicted of burglary and robbery, and more in line with those

Appellant argues that the trial court was overcome by the harsher facts underlying his conviction, especially the shooting of Officer Kuzak and his permanent paralysis. However, the notes of testimony from Appellant's sentencing hearing do not reflect that the trial court had any undue fixation on Officer Kuzak's grave injury and its ongoing and permanent impact on his life. Further, the trial court must apply 42 Pa.C.S. § 9721(b), which obliges trial courts imposing sentence to take into account "the gravity of the offense as it relates to the impact on the life of the victim and on the community," among other factors. 42 Pa.C.S. § 9721(b). We cannot find fault with affording the impact on Officer Kuzak's life, and on his community, due consideration. Appellant cites several ugly aspects of the underlying crime, but though they may be severe, they are far from irrelevant. Further, the sentencing notes reveal that the trial court made a relatively deep study of Appellant and his background prior to imposing sentence. *See* N.T. 11/15/12 at 16-18. It is not the trial court's fault if that study did more to cause concern

---

sentences given to defendants who have committed a violent felony that results in injuries." *See* Appellant's Brief at 109. Regardless of who was the gunman, this was an armed home invasion, which is one of the most serious and terrifying violent felonies we can contemplate. To attack and threaten a person in their own home is deeply traumatic, and certainly this home invasion resulted in a deeply serious injury that could easily have caused Officer Kuzak's death. Surely Appellant can advocate for himself without deprecating the seriousness of these gruesome facts.

than alleviate it; it is Appellant's fault, squarely and utterly. We can find no abuse of discretion.[23]

Judgment of sentence affirmed.

Judge Murray joins this Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2021

---

[23] We do note that the trial court's characterization of Appellant as "incorrigible" gave this Court momentary pause; that word indicates an utter inability to be reformed (or "corrected" in the parlance of our carceral regime). However, this single adjective cannot surmount the strong presumption that the trial court adhered to the sentencing considerations codified at 42 Pa.C.S. § 9721(b), which requires that in every case, a sentencing court consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, **and the rehabilitative needs of the defendant**" (emphasis added). *Id.*